**UNITED STATES of America and Special Agent Reid L. Hill, Jr., Petitioners,**

v.

**Isaac K. BRASWELL and Marcus A. Garriss, Respondents.**

**No. 77–28–CIV–8.**

United States District Court,
E. D. North Carolina,
Wilson Division.

July 20, 1977.

Samuel T. Currin, U. S. Atty., Raleigh, N. C., for petitioners.

Cary Whitaker, Roanoke Rapids, N. C., for respondents.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

This matter is before the court on a petition filed May 18, 1977, pursuant to 26 U.S.C. §§ 7402(b) and 7604(a), seeking the enforcement of an Internal Revenue Service summons. At the behest of Special Agent Reid L. Hill, Jr., the summons in question was issued on October 13, 1976, and promptly served on Isaac K. Braswell, a preparer of federal income tax returns in Roanoke Rapids, North Carolina. Hill was investigating the income tax liability of Dr. Marcus A. Garriss for the four tax years, 1971–1974; and it happened that Braswell was known to possess copies of Dr. Garriss' federal income tax returns for the earlier years, 1961–1969.[1] The summons—which Braswell has chosen to resist—was returnable on October 27, 1976, and required him essentially to produce the aforementioned retained copies of Garriss' tax returns, including all attached schedules.

To justify his continued non-compliance, Braswell avers that (1) he was merely the custodian of the subject records, which in fact belonged to Garriss; (2) the summons was part of a "fishing expedition," whose sole purpose was to gain evidence to aid the criminal prosecution of Garriss for income tax evasion; (3) the request of the IRS was vexatious since it already has or should have the information solicited; and (4) the subject records have since been surrendered to Dr. Garriss due to the IRS's six-month delay in bringing this enforcement action.

Also, since the petition was filed, Dr. Garriss himself has moved to intervene. It appearing that the intervenor substantially repeats the defenses of Braswell—with the important difference that he has invoked the Fifth Amendment privilege against self-incrimination, the motion to intervene is allowed.

A show-cause hearing was held on June 21, 1977. For the reasons stated below, the court has concluded to enforce the original

---

1. Of those nine returns Braswell himself prepared only the last; however, copies of the other returns (1961–1968), which had been prepared by a local lawyer, were given him by Garriss when he originally took over the responsibilities from the lawyer.

documentary summons against both respondents.

## I.

The show-cause hearing demonstrated that the IRS has satisfactorily complied with the established criteria for issuing a Section 7602 summons. 26 U.S.C. § 7602. *See United States v. Powell*, 379 U.S. 48, 52–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

The uncontradicted testimony of Special Agent Hill was that the earlier returns were germane to his investigation because Garriss had obligated himself under the installment method of accounting to pay taxes in the years under investigation based on a transaction first reported in the earlier years. *See* 26 U.S.C. § 453. Hill stated further that Braswell had voluntarily allowed him to examine the earlier returns, whereupon he noticed an apparent discrepancy between the basis listed for the property in the earlier and later returns. Also, he noted among the returns the presence of figures which pertained to the actual cost of certain land (as well as of subsequent improvements thereon) which had been sold during the years under investigation. The summons, with exemplary particularity, indicates precisely the material the IRS seeks, and it is clearly relevant to the lawfully authorized duty of the IRS to monitor Dr. Garriss' civil liability under our self-reporting tax system. 26 U.S.C. §§ 6001, 7602 and 7801(a); *cf. Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 208–209, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

■ It is immaterial that civil liability for deficiencies in some of the years nominally "under investigation" (not to mention each of the earlier years) would appear time-barred by the general three-year stat-

ute of limitations, since proof of fraud opens up an otherwise closed civil file. And under our basic system of honest self-reporting fraud is necessarily an omnipresent possibility, with the result that probable cause to suspect it need not be proven to justify a subpoena which deals with documents relevant to "closed" years.[2] *United States v. Powell, supra*, 379 U.S. at 52–53, 85 S.Ct. 248.

■ Nor is the legitimate *civil* purpose which underlies this summons negated by the possibility that the investigation will eventuate in criminal prosecution for fraud. So long as fraud constitutes a basis for imposing civil liability as to "closed" tax years, an IRS summons will enjoy—at least prior to any actual recommendation by the service of criminal prosecution—the presumption of a valid non-criminal purpose. *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970); *cf. Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1963).

Nor has the IRS vexatiously sought information which it already has. *See* 26 U.S.C. § 7605(b). The undisputed fact is that the IRS has only enough space to store tax returns for seven years, after which period they are routinely destroyed.

## II.

The case of *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), is the cornerstone of Dr. Garriss' Fifth Amendment claim of privilege. In *Boyd* the court reasoned that the Fourth and Fifth Amendments, being *in pari materia*, are to be read together—and concluded that the "seizure" and the "subpoena" of a man's *private papers*[3] to be used in evi-

---

**2.** It is noted, however, that Special Agent Hill testified that the IRS expects to prove that Garriss is liable for yearly deficiencies from 1971–1974, inclusive, of over $40,000. Certainly that fact alone suggests the relevance, from a civil fraud point of view, of re-examining the past years.

**3.** By "private papers" the *Boyd* court intended to convey primarily a proprietary concept which embraced all of an owner's "goods and

chattels"—rather than any latterday concept of ultrapersonal property like a private diary. Indeed, the document subpoenaed in *Boyd* was an invoice prepared by third parties. Built into that proprietary concept was an implicit exception for objects as to which the state had an arguable proprietary-type interest. That exception came to include contraband, the fruits or instrumentalities of a crime, "excisable articles and books required by law to be kept with

dence against him are equally impermissible since neither is substantially different from compelling him to be a "witness against himself." U.S.Const. Amd. V. Thereafter, although a Fourth Amendment-based rule was used to exclude evidence acquired as a result of a procedurally-invalid search and seizure, *see Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and *Harris v. United States,* 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), the Fifth Amendment was often invoked on the authority of *Boyd* to exclude seized personal items based on their characterization as being of merely "evidential" value. *Gouled v. United States,* 255 U.S. 298, 306, 41 S.Ct. 261, 65 L.Ed. 647 (1921); *Agnello v. United States,* 269 U.S. 20, 33–34, 46 S.Ct. 4, 70 L.Ed. 145 (1925). *See* Footnote 3, *supra.*

Thus the major theme of *Boyd* is recognized to be the protection of the individual's right to have an inviolable "private enclave," *see, e. g., Bellis v. United States,* 417 U.S. 85, 91, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), and *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), where personalty of all kinds might be safely stowed since it could never be tapped as a source of "mere evidence" against the proprietor—not even if the evidence (as in *Boyd*) were purely physical, containing no testimonial admissions. Suffice it to say, this "mere evidence" rule—and along with it much of the logical support for the *Boyd* rule against compelling the production of private papers—has been wholly abrogated by the Supreme Court, so that now even items which contain incriminating testimonial revelations, authored by their owners and possessors, are subject to a properly authorized search and seizure. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). *See also Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

█ Furthermore, in *Fisher v. United States,* 425 U.S. 391, 400–401, 96 S.Ct. 1569,

48 L.Ed.2d 39 (1976), the court disclaimed any implication in *Boyd* and subsequent cases that the Fifth Amendment enjoys a special role as "a general protector of privacy." That job belongs to the Fourth Amendment, which, as the court noted, involves a reasonableness doctrine, so that if a state's reason to believe incriminating evidence exists becomes sufficiently great, an invasion of privacy will be permitted. *Id.* at 400, 96 S.Ct. 1569. Thus there can be no general (or blanket) Fifth Amendment rule against compelling the production of private papers. *See The Supreme Court, 1975 Term,* 90 Harv.L.Rev. 1, 76–78 (1976). Rather, as the *Fisher* case establishes, the specific, limited concern of the Fifth Amendment is with the *personal compulsion* of evidence which is both *testimonial* and *incriminating.* With these three criteria in mind, we turn our attention to the facts of the case.

### A. Personal Compulsion.

█ It is stated in *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1972), that the privilege against self-incrimination by definition attaches to the individual—and not to incriminating information in the hands of third parties: "[a] party is privileged from producing the evidence but not from its production." *Id.* at 328, 93 S.Ct. at 616 (quoting from *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913)). The original summons here, directed as it was to Mr. Braswell, would have involved no enforced communication of any kind from Dr. Garriss; consequently, it is not felt that Braswell's subsequent surrender of the papers to Garriss should be allowed to effect its mutually-intended and mala fide purpose, which was to enable Garriss to enlarge his Fifth Amendment privilege by reaching out and "appropriat[ing] property that [would] tell [his] story." *Matter of*

---

respect to them," "and many other things of like character." *Gouled v. United States,* 255 U.S. 298, 308, 41 S.Ct. 261, 264, 65 L.Ed. 647 (1921).

The underscored language is of particular relevance to Section II.B.2 *infra.*

*Harris,* 221 U.S. 274, 279–280, 31 S.Ct. 557, 558, 55 L.Ed. 732 (1911) (Holmes, J.). "The rights and obligations of the parties became fixed when the summons was served . . . ." *Couch v. United States, supra,* 409 U.S. at 329, n. 9, 93 S.Ct. at 616.

■ Garriss contends further, however, that Braswell was merely the *custodian* of the papers in an attempt to characterize this as one of those exceptional instances, referred to in *Couch,* "where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact." *Id.* at 333, 93 S.Ct. at 618. *See Fisher v. United States, supra,* 425 U.S. at 398, 96 S.Ct. 1569. First, it is not clear that this cautious suggestion of the possibility of an exception to the personal-compulsion criterion will bear up under future analysis, since it appears designed to protect an individual's justifiable expectation of privacy, a concern which the court later in *Fisher* sought to dissociate from the purpose and policy of the Fifth Amendment.

Secondly, even taken at face value, the custodial-safekeeping exception is inapplicable where, as here, the so-called custodian is an "independent contractor," with many other clients, who not only has been given full personal access to the contents of the documents but also has had no apparent strictures imposed by the owner on his discretion in disclosing the records to others, so as to safeguard their confidentiality from unnecessary exposure.[4] *Couch v. United States, supra,* 409 U.S. at 333 and n. 16, 334–335, 93 S.Ct. 611. Moreover, little justifiable expectation of privacy is possible where the only plausible inference is that the papers were turned over for the very purpose of mandatory disclosure by their custodian, if necessary, in the preparation of the owner's federal income tax returns. *Id.* at 335–336, and 337, 93 S.Ct. 611 (Brennan, J., concurring). *See* 26 U.S.C. § 7602(2). Here, indeed, the subpoenaed

documents have already been *voluntarily* disclosed in their entirety by Dr. Garriss, in response to the duty of self-reporting that undergirds our tax system. *Id.* at 338, 93 S.Ct. 611 (Brennan, J., concurring). *See United States v. Kahriger,* 345 U.S. 22, 31–33, 73 S.Ct. 510, 97 L.Ed. 754 (1953). Having actually been filed with the government, the contents of these returns definitively left the "private enclave" and entered the public domain. In the vernacular, "the horse is out of the barn." These are decidedly not the sort of papers with which the custodial-safekeeping exception was concerned.

B. *Testimonial and Incriminating Evidence.*

■ Even were Dr. Garriss to be viewed as the subject of compulsory process, his Fifth Amendment claim fails simply because he is not required thereby to "make a *testimonial* communication that is incriminating." *Fisher v. United States, supra,* 425 U.S. at 408, 96 S.Ct. at 1579. The summons at issue would necessitate no oral testimony from Garriss at all; nor would it require him in any other way "to restate, repeat, or affirm the truth of the contents of the documents sought." *Id.* at 409, 96 S.Ct. at 1580. Indeed, because this is true of most documentary subpoenas, the *Fisher* court opined that the so-called Fifth Amendment prohibition against the production of private papers is "a rule searching for a rationale". *Id.* As a result, the tenuous thread by which the *Boyd* rule clings to life is the theory that even the mute act of production has testimonial implications of its own, which are said to be (1) the "implicit authentication" of the documents, i. e., the assurance, "compelled as an incident of the process", that the articles produced are the ones demanded, 8 Wigmore, Evidence § 2264 at 380 (McNaughton rev. 1961), and (2) the tacit admission that the subpoenaed documents were in fact in one's possession and control. *See Fisher v. United States,*

4. It will be recalled that Braswell voluntarily disclosed the contents of the documents in question to Special Agent Hill.

674

*supra,* 425 U.S. at 411–412 and n. 12, 96 S.Ct. at 1581.

### 1. *Implicit Authentication.*

■ The "implicit authentication" rationale presupposes that the production of documents pursuant to subpoena is tantamount to putting the respondent on the witness stand to authenticate them. But that is not necessarily so. For one thing, the respondent may not even be qualified to authenticate them. *See Fisher v. United States, supra,* 425 U.S. at 413, 96 S.Ct. 1569. More importantly, despite the presence of the usual *ad testificandum* clause in a subpoena *duces tecum,* the production of papers by one having them under his control and capable of authenticating them may be enforced independently of his testimony, since there is always the possibility that the papers may be proved or authenticated by others. *Wilson v. United States,* 221 U.S. 361, 372, 31 S.Ct. 538, 55 L.Ed. 771 (1911). For example, the documents here were prepared by third parties, who presumably would be able to authenticate them so far as would be required at any trial. Also, there is the possibility that the copies of the tax returns bear Garriss' signature, in which case they might be authenticated by a handwriting expert. *Cf. Andresen v. Maryland, supra,* 427 U.S. at 473 and n. 7, 96 S.Ct. 2737. At all events, despite Professor Wigmore's intimation to the contrary, we do not think that Garriss' production of the documents would estop him to object on these same Fifth Amendment grounds if the returns were ever sought to be introduced into evidence against him without third-party authentication. (Under these circumstances, of course, as the next subsection will indicate, such an objection might well prove unavailing.)

### 2. *The "Public Records" Exception.*

■ As the *Fisher* court noted, however, the "implicit authentication" rationale has been found ineffective to bar documentary subpoenas against custodians of corporate, union or partnership records, even though the records which contained incriminating entries were kept (and, in the case of the partnership, also co-owned) by the person subpoenaed *and his producing them was conceded to be sufficient authentication to permit their introduction against him.*[5] *Fisher v. United States, supra,* 425 U.S. at 413 and n. 14, 96 S.Ct. 1569. It would appear, therefore, that if the rationale is unpersuasive in the case of a partner, who holds jointly-owned records, *see Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), neither should it be allowed to prevail here.

This is so because of the "important difference in the constitutional protection afforded their possessors between papers exclusively private and documents having public aspects." *Davis v. United States,* 328 U.S. 582, 602, 66 S.Ct. 1256, 1265, 90 L.Ed. 1453 (Frankfurter, J., dissenting). *See also United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), and *Wilson v. United States,* 221 U.S. 361, 380, 31 S.Ct. 538, 55 L.Ed. 771 (1911); 8 Wigmore, Evidence § 2259b at 355–356 and n. 2. As the *Bellis* court emphasized, the records of a "collective entity" like a partnership are subject to production and authentication primarily because the custodian or co-owner of such records has no valid expectation that such records can be kept private. *Bellis v. United States, supra,* 417 U.S. at 91–92, 94 S.Ct. 2179. Similarly, a taxpayer can have no valid expectation that papers which bear directly upon his income tax liability will not be examined by the government. (Especially is this true where the originals of those papers have been filed with the government.) It is not as if the taxpayer has been asked to reach deep within "a private inner sanctum of individual feeling and thought" and to produce (and thus acknowledge as his own) recorded musings which have no regulatory, non-criminal significance. Far from it. Because of our income tax system, records

**5.** In those cases, the obvious failure to consider the possibility of third-party authentication may be in part attributable to the fact that, with the exception of the partnership case, the individual subpoenaed was probably the only one capable of authenticating the records.

which directly relate to a man's activity for profit must be understood to be "infused with a public interest" from the moment of their recordation, since "the public has an interest [in them] other than that which they ·may serve as evidence in a case", *Davis v. United States, supra,* 328 U.S. at 595–596, 66 S.Ct. at 1263 (Frankfurter, J., dissenting). Accordingly, they have made subject to examination by the IRS under 26 U.S.C. § 7602.[6] Therefore, a claim of privilege by a taxpayer in the face of a proper IRS documentary summons will be unavailing since, "by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority." *Bellis v. United States, supra,* 417 U.S. at 92, 94 S.Ct. at 2185 (quoting from *Wilson v. United States, supra,* 221 U.S. at 382, 31 S.Ct. 538).

For example, in *Johnson v. United States,* 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913) (Holmes, J.), a bankrupt asserted his privilege against self-incrimination to forestall the use in evidence against him of his business records which had been mandatorily transferred to a trustee under Section 70 of the Bankruptcy Act. 11 U.S.C. § 110. In effect, the court held that the bankrupt could challenge neither the original order to surrender his "books of account," *see Matter of Harris, supra,* 221 U.S. at 278, 31 S.Ct. 557, nor any subsequent evidentiary use of the materials against him. Just as the Bankruptcy Act renders the "documents relating to [a bankrupt's] property" subject to mandatory transfer, Section 7602 of the Internal Revenue Act clearly subjects to the possibility of transfer and examination any "books, papers, records or other data" which relate to the correctness of a taxpayer's returns. Therefore, in neither case may the citizen frustrate a broad congressional regulatory policy by placing

incriminating communications within such documents. After all, "a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime." *Johnson v. United States, supra,* 228 U.S. at 459, 33 S.Ct. at 572. Because of the clear regulatory interest in the copies of Garriss' tax returns, "no constitutional rights are touched. The question is not of *testimony* but of surrender . . . ." *Matter of Harris, supra,* 211 U.S. at 279, 31 S.Ct. at 558 (emphasis added) (quoted in *Fisher v. United States, supra,* 425 U.S. at 411, 96 S.Ct. 1569).·

In short, whatever Fifth Amendment interest might be overridden by deeming Garriss' production of the records to be an "implicit authentication" of them, the infringement is justified as being purely incidental and necessary to the effectuation of an otherwise valid and substantial congressional purpose. *Cf. United States v. O'Brien,* 391 U.S. 367, 376–378, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

### 3. *Possession and Control.*

Moreover, the second tacit averment said to be implicit in the act of production is that of "possession and control." Here, however, Garriss' possession and control of the documents is, as the court said in *Fisher,* a "foregone conclusion"; therefore, an affirmative response to the subpoena will itself add little of testimonial value to what the government already knows. *Fisher v. United States, supra,* 425 U.S. at 411, 96 S.Ct. 1569. Nor can the fact of Garriss' possession be considered in incriminating admission, since the records are certainly not contraband.

On the other hand, conceding that. it is not known *for a certainty* that Garriss still possesses the records, a subpoena *duces tecum* is still valid. For should Garriss fail to

---

**6.** 26 U.S.C. § 7602 provides in pertinent part:

"For the purpose of ascertaining the correctness of any return . . . [or] determining the liability of any person for any internal revenue tax . . . the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax . . . or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry . . . ."

produce the records, he could not be forced to reveal their whereabouts or explain or account under oath for their nonproduction if it would tend to incriminate him. *Curcio v. United States,* 354 U.S. 118, 123, 128, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). At that time he would be free to invoke the privilege. The key difference between this case and one in which the location or existence of the documents is genuinely in doubt is, however, twofold. First, because Garriss has virtually conceded his possession of the records, he runs a substantial risk that nonproduction will result in a citation for contempt. Secondly, because he is known to possess records which the IRS may properly subpoena, his unexplained failure to produce them may be used in evidence against him even as to civil or criminal fraud. *Beard v. United States,* 222 F.2d 84, 92–93 (4th Cir.), *cert. denied,* 350 U.S. 846, 76 S.Ct. 48, 100 L.Ed. 753 (1955); *cf. Johnson v. United States, supra,* and *Matter of Harris, supra.* Contrariwise, if Garriss were not known to possess these items of regulatory significance, his mute nonproduction in the face of a subpoena *duces tecum* would not necessarily be fraught with such consequences.

Thus, it is not felt that a validly issued Section 7602 documentary summons, *see* Section I *supra,* impinges on the policies behind the privilege against self-incrimination. *See Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964). In the first place, as previously stated, so far as privacy *per se* remains a Fifth Amendment concern, the documents themselves are of a quasi-public nature. More importantly, the subject of a documentary summons or subpoena is not faced in a significant way with what has been called "the cruel trilemma of self-accusation, perjury, or contempt". *Id.* The compulsion to produce specific objects which one may or may not possess is decidedly not the same thing as the compulsion

to talk at all events, to answer any and all questions. For one thing, the subpoena *duces tecum,* shorn of its *ad testificandum* clause, does not similarly threaten to "extract from the *person's own lips* an admission of guilt," 8 Wigmore, Evidence § 2263 at 378–379 (McNaughton rev. 1961), since there is not the same risk there is with verbal interrogation that it will degenerate into moral browbeating or other "third-degree" excesses.

The other real danger of compulsory process is that the subject will be forced to perjure himself, which would be an "intolerable invasion of his personality." *United States v. Grunewald,* 233 F.2d 556, 591 (2nd Cir. 1956) (Frank, J., dissenting), *rev'd* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). *See* 8 Wigmore, Evidence § 2251 at 316 (McNaughton rev. 1961). But the "cruel" impulse to perjury that is present when a man is forced to testify orally about something largely within his personal knowledge does not similarly attend compulsory paper process. Silence is contemptuous per se in the one instance; whereas, in the other it is not. And if a man must speak to avoid contempt and if the truth will hurt, then self-serving falsity is compelled. But in our case neither silence nor non-production is necessarily contemptuous; nor does a sufficiently-particular documentary summons, naming certain items, constitute an open invitation to fabricate or lie.

Thus, any false claim of destruction or disappearance by Garriss would not be the direct product of any compulsion upon him to speak, but would result rather from "the inherent psychological pressure to respond at [either a contempt proceeding or other trial] to unfavorable evidence" having to do with his nonproduction.[7] *Cf. Andresen v. Maryland, supra,* 427 U.S. at 473, 96 S.Ct. at 2745.

■ In summary, where an otherwise proper documentary subpoena (concerning

---

7. *Cf. United States v. Beattie,* 522 F.2d 267, 275 (2nd Cir. 1975) (Friendly, J.):

"Perjury is not a real refuge as it is when the inquiry concerns something largely within the personal knowledge of the accused and the temptation to lie is encumbered mainly

by conscience. Only a fool would deny the receipt of workpapers when the accountant would testify to their delivery; the temptation, as a practical matter, would thus be limited to a false claim of destruction or disappearance. But this possibility was present in equal degree in *Bellis.*"

documents whose likely whereabouts is established) is met by a Fifth Amendment claim of privilege, the court has concluded to assimilate the underlying logic in *Gouled v. United States, supra,* 255 U.S. at 306, 41 S.Ct. at 264, that "the result is the same to one accused of crime, whether he is obliged to supply [physical] evidence against himself or whether such evidence be obtained by [a search and seizure]", to the contrary outcome recently reached in *Andresen v. Maryland, supra,* that even private, "testimonial" documents may be seized. Hence the court holds that in such a case the practical result of a Fourth Amendment search and seizure and of a Fifth Amendment subpoena *duces tecum* should be the same. For, if anything, the documentary subpoena route is more compatible under the circumstances with a high constitutional regard for individual dignity and privacy, and therefore the court will not discourage it by a contrary result.

For the foregoing reasons an order will issue requiring the respondents to produce to the petitioners the documents described in the IRS summons issued on October 13, 1976 to respondent Braswell.