Mona REY and Robert Earl
Jones, Petitioners,

v.

Honorable William MEANS, District
Judge IN AND FOR TULSA COUNTY,
Oklahoma, Respondent.

No. 51539.

Supreme Court of Oklahoma.

Jan. 18, 1978.

As Corrected Jan. 23, 1978.

Patrick A. Williams, Robert E. Jones, Tulsa, and Jack E. Rider, Stilwell by Patrick A. Williams, Tulsa, for petitioners.

George P. Striplin, Reece B. Morrel, Morrel, Herrold & West, Inc., Tulsa, for respondent.

LAVENDER, Vice Chief Justice:

An incompetent, through his guardian, and a corporate entity, of which the incompetent was the major stockholder and had been its president, brought suit against Mona Rey (Rey), one of the petitioners, and another individual in the District Court of Tulsa County. That suit alleged fraudulent overreaching of the incompetent. Relief sought recovery of funds in an amount alleged to have been wrongfully taken from the incompetent and his business corporation. A constructive trust was sought to be impressed against the defendants' property.

A subpoena duces tecum was issued' that was directed to Rey for production of documents[1] at a depositional hearing. Rey sought to quash the subpoena based on invoking her state and federal constitutional privilege against self-incrimination as to criminal fraud. Respondent judge refused to quash the subpoena. Rey and her attorney of record in the civil fraud case, as petitioners, bring this original action asking this court to assume original jurisdiction and issue writ of prohibition against the respondent judge to prevent the enforce-

---

1. Documents were described in the subpoena as:

a) All income tax returns of yourself and DeWayne Ketel, either jointly or separately for the years 1966 through 1976;

b) All intangible tax returns as of January 1, 1966, through the last year that they were required to file;

c) All of your financial statements in whatever name made, and of DeWayne Ketel, prepared at any time during the period from 1966 through the date of the issuance of this subpoena;

d) All books and accounting records including, but not limited to, those showing income, receipts, gifts, inheritances, loans, borrowings, disbursements of yourself and DeWayne Ketel for the periods of January 1, 1966, through the date of the issuance of this subpoena;

e) All records of property settlements in any and all divorce actions between the date of January 1, 1966, and the date of the issuance of the summons including, but not limited to, decrees of divorces entered;

f) Copies of all telegrams, wires, records of receipts and transmissions of money, funds or other goods and valuables;

g) Copies of all deeds, closing statements and other records pertaining to the acquisition and sale of real and personal property including closing statements;

h) Copies of notes payable given F. C. Connelly, F. C. Connelly & Company, C & H Finance Co., Midwest Electric Supply Co., Ernest Miller;

i) The M. R. Connelly bank account, checks, deposit slips, and bank statements at the NBT or Bank of Oklahoma.

ment of his order overruling the motion to quash the subpoena duces tecum.

Parties agree the petitioner attorney, through his attorney-client relationship, is controlled by the decision here as to Rey. If Rey is immune from the subpoena, then the attorney is too. We consider Rey as the only individual involved as to the production of documents and as to the invoking of the constitutional privileges against self-incrimination.

This court assumes original jurisdiction under its exercise of a general superintending control over all inferior courts. Okl.Const.Art. 7, § 4. Granting a writ of prohibition is discretionary in the exercise of that supervisory control according to the nature and circumstances of each particular case. *Delhi Gas Pipeline Corporation v. Swanson,* Okl., 520 P.2d 670, 672 (1974).

Petitioners suggest a conflict between *Giles v. Doggett,* Okl., 500 P.2d 574 (1972) and *State v. Thomason,* Okl.Cr., 538 P.2d 1080 (1975). *Giles, supra,* refused discovery, requiring production of personal documents, books, and records under 12 O.S.1971, § 548, upon the invoking of the privilege against self-incrimination. *Thomason, supra,* refused that same constitutional privilege as to the taking of a handwriting exemplar. Petitioners argue *Giles, supra,* is controlling here, with the invoking of the privilege against self-incrimination, and the subpoena duces tecum should be quashed.

Respondent judge, through the plaintiffs in the civil fraud case, contends a modern trend of narrowing the constitutional privilege against self-incrimination allows the production of documents required under the subpoena duces tecum.

We see no conflict between *Giles, supra,* and *Thomason, supra;* rather, we distinguish them. *Giles* was concerned with testimonial evidence. *Thomason* was concerned with physical evidence used for identification.[2] The privilege against self-incrimination is not limited to criminal prosecutions, but may be invoked in any proceeding if the evidence sought might tend to subject one to criminal responsibility. *Giles, supra,* 575.[3] There is no broader protection against self-incrimination under the particular phraseology of our state's constitution than the federal constitution. *Thomason, supra.* An examination of recent United States Supreme Court decisions is required for the present understanding of the constitutional privilege against self-incrimination, both federal and state.

During the October term, 1975, the United States Supreme Court in two cases refused the privilege against self-incrimination concerning documents and papers. One case used a subpoena duces tecum for the production of documents. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In the other case, the documents were secured through a search warrant. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). *"Fisher* represents a genuine attempt by the Court to articulate its reasoning in fifth amendment document cases. The decision at least makes it clear that a fifth amendment claim is not to be determined by a defendant's expectations of privacy. From *Andresen* it seems that fourth and fifth amendment issues will receive separate and

---

2. Comment—Irby, Production of Documents, 11 U.Rich.L.Rev. 653, n. 47 reads, in part:

"While the basic fifth amendment premises in *Boyd,*[3] as applied to documents, were being

[3] *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). There the fifth amendment privilege was extended to private papers and documents.

narrowed, another body of law involving the fifth amendment was developing. See *United States v. Mara,* 410 U.S. 79 [19, 93 S.Ct. 774, 35 L.Ed.2d 99] (1973); *United States v. Dionsio [Dionisio],* 410 U.S. 1 [93 S.Ct. 764, 35 L.Ed.2d 67] (1973); *Gilbert v. California,* 388 U.S. 263

[87 S.Ct. 1951, 18 L.Ed.2d 1178] (1967); *United States v. Wade,* 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967); *Schmerber v. California,* 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] (1966). These decisions concerned use of identifying physical characteristics of an accused. Generally, they held that such use was outside the protection of the fifth amendment and distinguished physical and testimonial evidence. * * *" (FOOTNOTE ADDED.)

3. As to civil proceedings, see *McCarthy v. Arndstein,* 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924).

independent analysis. * * * The importance of *Fisher,* and to a lesser extent *Andresen,* lies not in the erosion of the principles of *Boyd,*[4] but rather in what seems to be their gradual replacement of the same.[5] (Footnotes added.)"

With *Fisher* the threshold element becomes compulsion. That opinion recognized two forms of testimonial compulsion: Compulsion to create the document and thus "testify" in writing, and compulsion to produce the subpoenaed document. The act of producing the documents could be ".testimonial" on two grounds: Production both implicitly authenticates the documents as those subpoenaed and admits the existence of the documents and the control or possession of them by the party subpoenaed.[6] "Implied authentication" of the produced documents was not found to exist in *Fisher, supra.* There seems to be two suggestions of authentication: (1) The document produced is the document demanded; and (2) production is a voucher of the accuracy or truthfulness of the contents. *Fisher, supra,* found no problem, for the records involved were worksheets prepared by an accountant. There, the party compelled to produce could not testify as to the correctness of the contents. The Fisher decision refused to discuss the fifth amendment shielding one from producing his own tax records in his possession as not being involved there.

In *Andresen, supra,* the compulsion element was lacking, for the personal documents were secured through a legal search warrant. The one seeking to invoke the privilege of self-incrimination was not required or compelled to produce the papers. There was no "implied authentication," for there was no compelled production of the papers. Authentication came through another witness. Andresen, the individual against whom the search was directed, was not required to aid in the discovery, produc-

tion, or authentication of incriminating evidence. He was not compelled to testify in any manner. While *Fisher* implied that private papers would be shielded only from forced production, *Andresen* made explicit this apparent narrowing of the privacy interests protected in the fifth amendment.[7]

On the production of documents, we find the present fifth amendment rationale to be that set out in the *Irby* comment[8] as:

"When the requested documents are in the hands of the claimant, the elements of compulsion, incrimination and testimonial communication must all be present to invoke the protection of the fifth amendment privilege. The pivotal element is compulsion. If there is no compulsion upon the claimant, the Court's inquiry is over.

"Compulsion exists in the forced production of documents by a motion to produce or a subpoena duces tecum issued to the person claiming the privilege. The compulsion must be upon the claimant, not a third person. If the person claiming the privilege is not compelled to do something himself, his fifth amendment rights are not violated. An agency relationship does not alter this result.

"Possession of the documents is important in aiding the Court in evaluating whether personal compulsion has been exerted on the person claiming the privilege, although it is not a controlling consideration. It is evident that the compulsion requirement will be more easily met if a person is forced to produce papers that are in his possession. Seemingly, certain constructive possessions may be sufficient to satisfy the compulsion requirement.

"If the Court finds that there is compulsion exerted on the claimant, it will look to see whether the claimant is compelled to make an incriminating and testi-

---

4. See n. 3, supra.

5. See n. 2, pp. 664, 665.

6. Ritchie, Compulsion That Violates the Fifth Amendment: The Burger Court's Definition, 61 Minn.L.Rev. 383, 394.

7. See n. 7, p. 396.

8. See n. 5, p. 662.

monial communication. This communication may be oral testimony, a written statement or a communicative or assertive act. First, the Court will examine the *contents* of the documents. The contents may be either incriminating or testimonial, or both. If either of these elements is missing, the Court will next look beyond the contents to the compelled *act of producing* the papers. If the act of producing the documents is both incriminating and testimonial, then there is a valid fifth amendment claim.

"This rationale in *Fisher* differs from that in the earlier cases in that it has completely eliminated any privacy considerations. Beginning with *Boyd,* and continuing through *Couch,*[9] an individual's right to or expectation of privacy was a primary concern of the Court in determining whether there was a valid fifth amendment claim. In *Fisher,* the Court has stated that this will no longer be part of an inquiry into a fifth amendment claim. Possession and ownership are not primary considerations under this rationale. They are still important factors, but only when considered in relation to the elements of compulsion, testimony and self-incrimination." (Footnotes deleted; Footnote 9 added.)

■ Respondent urges waiver of the fifth amendment privilege as to income tax returns sought to be produced here, for the privilege was not claimed prior to filing the return under *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). There, the privilege was not allowed upon the introduction by the government of an income tax return which showed Garner's occupation to be a gambler. By the filing of the return, Garner was found to have waived his privilege of self-incrimination. The opinion notes the choice is to file or remain silent. One cannot file a return which makes disclosures and concurrently claim the privilege. *Garner, supra,* is

an introduction into evidence problem. *Garner* is not a production of document problem. Opposing party, the government, already had the tax return. Its holding might be considered in determining if the tax return was self-incriminating but that the privilege against its use had been waived. *Garner* had no effect on *the compelled act of producing the document* and filing the return is no waiver as to the effect of that compelled act.

Although argued by respondent, we place no emphasis on *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787. In *Shapiro,* the privilege was not applied to required records. Much of its rationale comes from refusal to call a required record a private paper. Here, we refuse privacy consideration as to the fifth amendment privilege against self-incrimination. The *Shapiro* doctrine[10] was not considered in *Garner, supra.*

■ We believe respondent correctly contends that the assertion of the privilege by the one claiming incrimination does not of itself establish that hazard. It is for the trial court to say whether the silence, or as here the refusal to produce the documents, is justified. There must be reasonable cause to apprehend danger. However, the claimant is not required to prove the hazard in the sense in which a claim is usually required to be established in court. To sustain the privilege, it need only be evident from the implications surrounding the question (or production), and in the setting in which it is asked (or required). *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1950). Ordinarily, the trial judge is in a much better position to appreciate the essential facts than an appellate court, and he must be permitted to exercise some discretion, controlled by common sense, when dealing with this necessarily

---

**9.** *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

**10.** See criticism of *Shapiro,* Notes, Taxpayer's Records, 16 W & M L.Rev. 666, 691, and state-

ment at p. 692 " * * *, the Supreme Court has not applied the *Shapiro* doctrine to tax records, although several lower courts have."

difficult subject.[11]  Factors to be considered include all the circumstances of the case, including any previous disclosures.[12]

In this original action, we are hampered with insufficient facts.  There are indications of prior depositions and hearings in the trial court before ruling on the motion to quash the subpoena.  We do not have before us any determination made by the trial court, other than the refusal to quash the subpoena.  The actual order is not here.  The briefing suggests that as between *Giles, supra,* and *Thomason, supra,* the trial court thought *Thomason* to be better and in line with more recent federal cases.  It was for that reason the subpoena was allowed to stand.

  Under the views expressed in this opinion, we grant the writ of prohibition as to the present order of the respondent judge that overrules the motion to quash the subpoena duces tecum.  We remand to the trial court with instructions to hold an in camera hearing.  This shall include an in camera examination by the court of any subpoenaed documents.  The court shall then make findings and determinations suggested herein as the present fifth amendment rationale.  This includes the establishment, or the denial, of the hazard of incrimination and the validity, or invalidity, of a fifth amendment claim.  We note the civil action is at the depositional and discovery stage.  That discovery may be subject to protective orders under the trial court's equitable powers, and at his discretion.  12 O.S.1971, § 548.  We give no opinion and make no decision as to immunity.

Insofar as the rules expressed in *Giles v. Doggett,* Okl., 500 P.2d 574 (1972) are in conflict with the fifth amendment rationale adopted in this opinion, the *Giles* opinion and all other cases of similar import are hereby modified.

Jurisdiction assumed, writ of prohibition granted, and cause remanded for additional hearing and determination before allowing the privilege against self-incrimination.

WILLIAMS, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

11.  Anno.—Privilege Against Self-Incrimination, 95 L.Ed. 1126, 1130 with citations.

12.  See n. 12, supra, 1133, 1134 with citations.