MALCOLM M. LOWDER, MARK T. LOWDER AND DEAN A. LOWDER v. ALL
    STAR MILLS, INC., LOWDER FARMS, INC., CAROLINA FEED MILLS,
    INC., ALL STAR FOODS, INC., ALL STAR HATCHERIES, INC., ALL
    STAR INDUSTRIES, INC., TANGLEWOOD FARMS, INC., CON-
    SOLIDATED INDUSTRIES, INC., AIRGLIDE, INC., AND W. HORACE
    LOWDER

No. 7920SC387

(Filed 4 March 1980)

1. **Contempt of Court § 5— order to show cause—no proper verification—no civil
   contempt**

    An order directing defendant to show cause why he should not be held in
    contempt could not lawfully be based on civil contempt since no petition, af-
    fidavit or other proper verification served as a basis for the issuance of the
    order, the order being issued on the basis of a corporate receiver's unsworn
    testimony given *ex parte* to the court.

2. **Contempt of Court § 5.1— indirect criminal contempt—absence of proper
   verification— show cause hearing—jurisdiction over defendant**

    Where defendant was accused of mismanaging, converting and wasting
    corporate assets, and the court ordered him to cooperate with receivers of the
    corporation and to provide them and plaintiffs with copies of his tax returns
    and a list of his assets, defendant's contempt, if any, in failing to provide the
    tax returns and list of assets was indirect criminal contempt, and the trial
    court had jurisdiction to determine whether or not defendant had violated its
    order to produce his records, even in the absence of a petition, affidavit or
    other proper verification.

3. **Contempt of Court § 6; Constitutional Law § 24.2— contempt proceeding based
   on affidavit—right to confront witness abridged**

    Inasmuch as an adjudication of contempt against defendant was based on
    the affidavit of a receiver of the corporation, the assets of which defendant
    allegedly mismanaged, converted and wasted, the adjudication was invalid,
    since the affiant did not testify at the contempt hearing and was not present;
    defendant had the right to confront and cross-examine witnesses by whose
    testimony his asserted violation was to be established; and defendant did not
    waive that right inasmuch as he adamantly objected to the use of the affidavit
    as a basis for holding him in contempt.

4. **Contempt of Court § 6; Constitutional Law § 74— failure to produce tax
   records and list of assets—self-incrimination pled—no contempt for failure to
   produce records**

    Where defendant was accused of mismanaging, diverting, converting and
    wasting corporate assets and he was instructed by the court to cooperate with
    corporate receivers, to supply them with copies of his tax returns, and to
    prepare and give to the receivers a schedule of his assets, defendant's failure
    to produce his tax returns and a schedule of his assets could not serve as the
    basis for finding him in contempt, since defendant claimed that his privilege

against self-incrimination would be violated if he were compelled to produce the documents, and defendant could not be required to write out a list of his personal assets.

**5. Contempt of Court § 6— show cause hearing—matters considered**

Since the sole question before the trial judge to be adjudicated at a hearing of an order to show cause why defendant should not be held in contempt for violation of the court's decree was whether the decree had been violated, the court correctly disregarded hearing defendant's contentions that the trial court erred in appointing receivers, in not considering his motion to alter and amend the findings of fact and conclusions of law in the court's original order, and in not hearing his motion to vacate.

APPEAL by defendant, W. Horace Lowder, from *Seay, Judge.* Order entered 21 February 1979 in Superior Court, UNION County, and order entered 28 February 1979 in Superior Court, MOORE County. Heard in the Court of Appeals 30 November 1979.

On 12 February 1979, defendant Lowder was ordered to appear in court on 21 February 1979 and show cause why he should not be held in contempt of a preliminary injunction filed on 9 February 1979. The 9 February order: (1) appointed receivers to operate businesses of which defendant was chief executive officer pending a trial on the merits of allegations that defendant had mismanaged, diverted, converted, and wasted corporate assets; (2) ordered defendant to provide the plaintiffs in the lawsuit and the receivers complete copies of his personal federal income tax returns, complete copies of his state tax returns, and a schedule listing the nature, extent, value, and location of all of his assets; and (3) enjoined defendant from interfering with the authority or duties of the receivers.

Prior to the 21 February hearing, defendant hired an attorney who filed motions to name individual stockholders in the corporations as additional parties in the lawsuit, to vacate a supplemental receivership order entered subsequent to the show cause order, and to alter and amend the findings of fact and conclusions of law upon which the preliminary injunction and order appointing a receiver were based.

At the 21 February hearing, defendant was held in contempt for failing to comply with the 9 February order, in that he:

"1. W. Horace Lowder, in contravention of the Orders of this Court, has interfered with and obstructed the Receivers

in carrying out their Court appointed duties in that W. Horace Lowder undertook to close the feed business of All Star Foods, Inc. and directed letters to the customers of that company that All Star Foods, Inc., was discontinuing its feed production as of February 10, 1979;

2. W. Horace Lowder has failed and refused to immediately relinquish possession of all property of the corporate defendants including, but not limited to, keys and an automobile owned by one of the companies in receivership, which property is in his possession;

3. W. Horace Lowder has not only refused but also has expressly advised the Receivers that he would not cooperate with them in the operation of the businesses and further advised the Receiver, John M. Bahner, Jr., that he had better not try to operate the businesses of the corporate defendants, or spend any time at the offices of All Star Foods, or the employees would walk out;

4. W. Horace Lowder has failed and refused to account to the plaintiffs, and the Receivers, for all assets of the corporate defendants, Carolina Feed Mills, Inc. and for all of the personal assets of W. Horace Lowder;

5. W. Horace Lowder has failed and refused to turn over to the Receivers the combination and keys of all locks and safes of the corporate defendants, together with all safety deposit box keys, notwithstanding the fact that the Receiver, John M. Bahner, Jr., on several occasions, has specifically asked him to do so and specifically advised him that his failure to do so was in contravention of the Order of this Court;

6. W. Horace Lowder has failed to provide the plaintiffs, and the Receivers, copies of his personal federal income tax returns, together with all supporting schedules and work papers in at least sufficient detail as is necessary to construct complete and accurate schedules in accordance with Internal Revenue Service regulations, and has failed to provide the plaintiffs and Receivers with copies of his North Carolina income tax returns and North Carolina intangible tax returns;

7. W. Horace Lowder has failed to provide plaintiffs, and the Receivers, a schedule of the nature, extent, value and location, of all of his assets, whether real, personal, tangible or intangible, and regardless of whether owned solely by him, or jointly with others, including assets held in the name of Tanglewood Farms . . ."

Defendant objected to the contempt citation on the grounds that: (1) the show cause order had been issued without an affidavit or other verification supporting it; (2) the only evidence of a contempt violation was a belated affidavit filed by one of the receivers who was not available at the hearing for cross-examination; and (3) the 9 February order, inasmuch as it required defendant to furnish copies of his federal and state income tax returns, violated defendant's Fifth Amendment right against self-incrimination.

The trial court gave defendant seven days to purge himself of contempt. Defendant gave oral notice of appeal.

On 28 February 1979, the trial court convened to determine whether or not defendant had purged himself of his contempt. Defendant had complied with all portions of the court's previous orders, except the requirement that he furnish complete copies of his personal federal and state income tax returns and a schedule of his assets. The court held that such refusal was both criminal and civil contempt and imposed a fine of $250 per day beginning 1 March 1979 for each day that defendant refused to furnish such documents.

Defendant appealed.

*Moore & Van Allen, by John T. Allred and Jeffrey J. Davis, for the plaintiffs and the receivers.*

*DeLaney, Millette, DeArmon & McKnight, by Ernest S. DeLaney, Jr., for defendant appellant.*

ERWIN, Judge.

The foremost question presented is whether the trial court had jurisdiction to adjudge defendant in contempt on 21 February 1979.

G.S. 5A-11 provides in pertinent part:

"§ 5A-11. *Criminal contempt.*—(a) Except as provided in subsection (b), each of the following is criminal contempt:

\* \* \*

    (3) Willful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution."

while G.S. 5A-21(a) provides:

"5A-21. *Civil contempt; imprisonment to compel compliance.*—(a) Failure to comply with an order of a court is a continuing civil contempt as long as:

    (1) The order remains in force;

    (2) The purpose of the order may still be served by compliance with the order; and

    (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable him to comply with the order."

As recognized in G.S. 5A-12(d) and G.S. 5A-21(c), a person may be found to be in both criminal and civil contempt, although only a single act was committed. Thus, defendant's acts, *i.e.*, his failure to comply with the court's order to refrain from interfering with the receivers as they carried out their duties and his failure to furnish copies of his income tax returns could possibly be acts of civil as well as criminal contempt.

[1] Two means are available to institute proceedings for civil contempt. One means is the issuance of an order of a judicial official directing the alleged contemnor to appear at a specified reasonable time and show cause why he should not be held in civil contempt, and the other is issuance of notice by a judicial official that the alleged contemnor will be held in contempt unless he appears at a specified reasonable time and shows cause why he should not be held in contempt. G.S. 5A-23. In either case, G.S. 5A-23 provides that "[t]he order or notice may be issued on the motion and sworn statement or affidavit of one with an interest

in enforcing the order, including a judge, and a finding by the judicial official of probable cause to believe there is civil contempt." Although the language used in the statute seems to be permissive in nature, prior case law under the antecedent statute established that in cases of civil contempt, previously denominated as cases *as for* contempt, a petition, affidavit, or other proper verification charging a willful violation of an order of court was necessary in order for an order to show cause to issue. *Rose's Stores v. Tarrytown Center*, 270 N.C. 206, 154 S.E. 2d 313 (1967); *In re Deaton*, 105 N.C. 59, 11 S.E. 244 (1890). We do not believe the Legislature has altered this requirement. *See* G.S. 5A-23; Billings, Contempt, Order in the Courtroom, Mistrials, 14 Wake Forest L.R. 909, 917 (1978). In the instant case, no petition, affidavit, or other proper verification served as a basis for the issuance of the order to show cause. To the contrary, the order was issued on the basis of the receiver's unsworn testimony given *ex parte* to the court. Thus, the order to show cause could not lawfully have been one based on civil contempt.

[2]  G.S. 5A-13 provides:

> "§ 5A-13. *Direct and indirect criminal contempt; proceedings required.* — (a) Criminal contempt is direct criminal contempt when the act:
>
>> (1) Is committed within the sight or hearing of a presiding judicial official; and
>>
>> (2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; and
>>
>> (3) Is likely to interrupt or interfere with matters then before the court."

Under prior statutory case law, failure to comply with a prior court order would amount to an act of indirect contempt when the act was committed outside the presence of the court, at a distance from it, even though the act was one which tended to degrade, interrupt, prevent, or impede the administration of justice as here. G.S. 5-7 (since repealed); *Blue Jeans Corp. v. Clothing Workers*, 275 N.C. 503, 169 S.E. 2d 867 (1969); *Galyon v. Stutts*, 241 N.C. 120, 84 S.E. 2d 822 (1954); *Ingle v. Ingle*, 18 N.C. App. 455, 197 S.E. 2d 61 (1973). This was so, even though the act fell within the

confines of G.S. 5-1(4) (since repealed). Accordingly, we hold that
defendant's acts were not acts of direct contempt within the
meaning of G.S. 5A-13(a)(3).

G.S. 5A-13(b) provides that "[a]ny criminal contempt other
than direct criminal contempt is indirect criminal contempt and is
punishable only after proceedings in accordance with the pro-
cedure required by G.S. 5A-15." G.S. 5A-15(a) provides that in
cases of indirect contempt, a judicial officer "may proceed by an
order directing the person to appear before a judge at a
reasonable time specified in the order and show cause why he
should not be held in contempt of court." The language of G.S.
5A-15(a) is substantially the same as that contained in its
predecessor statute, G.S. 5-7. Where an order to show cause was
based on an act of indirect contempt, the filing of a petition, an af-
fidavit, or other proper verification was not required as a prereq-
uisite to issuance of the order under G.S. 5-7, *see In re Deaton*,
105 N.C. 59, 11 S.E. 244 (1890), although they may be a proper
basis for issuance of the show cause order. *See Rose's Stores v.
Tarrytown Center, supra.* We do not believe that G.S. 5A-15(a) im-
poses such a limitation, and, thus, we hold that the trial court had
jurisdiction to determine whether or not defendant had violated
its 9 February order on 21 February 1979. Nevertheless, we hold
that the trial court erred in holding defendant in contempt.

[3] The trial court's basis for holding defendant in contempt was
twofold: (1) an affidavit had been submitted by John M. Bahner,
Jr., relating defendant's alleged contemptuous acts; and (2) de-
fendant's refusal in open court to furnish complete copies of his
income tax returns and his refusal to furnish a list, schedule, of
his personal assets. The affiant did not testify at the hearing and
was not present, nor did defendant testify at the hearing.

In *Cotton Mills v. Local 578*, 251 N.C. 218, 111 S.E. 2d 457
(1959), *cert. denied*, 362 U.S. 941, 4 L.Ed. 2d 770, 80 S.Ct. 806
(1960), our Supreme Court held that a person denying his asserted
violation of a restraining order in contempt proceedings has the
right under the provisions of Article I, Section 17 (now enacted as
Article I, Section 19) of the Constitution of North Carolina,
synonymous with due process of law under the United States
Constitution, to confront and cross-examine witnesses by whose
testimony the asserted violation is to be established, but the right

was waivable. Here, no waiver has occurred. Defendant, through his counsel, adamantly objected to the use of the affidavit as a basis for holding him in contempt. By doing so, he preserved his right to confront and cross-examine the witnesses against him, and inasmuch as the contempt adjudication was based on the affidavit, it was invalid.

[4] Under the Fifth Amendment of the United States Constitution, an individual may not be compelled in any criminal case to be a witness against himself. The privilege applies in any proceeding, civil or criminal, where the evidence supplied may serve as a link in a chain leading to a criminal conviction. *Maness v. Meyers*, 419 U.S. 449, 42 L.Ed. 2d 574, 95 S.Ct. 584 (1975), *accord*, *Allred v. Graves*, 261 N.C. 31, 134 S.E. 2d 186 (1964). Defendant has timely asserted the federal privilege, and, thus, we must determine its applicability.

The leading federal case determining whether or not an individual may be compelled to produce his federal income tax returns without violating his privilege to be free from self-incrimination is *Fisher v. United States*, 425 U.S. 391, 48 L.Ed. 2d 39, 96 S.Ct. 1569 (1976). In *Fisher*, the Supreme Court was called upon to decide whether enforcement of summonses served by the Internal Revenue Service on taxpayers' attorneys in investigations of possible civil or criminal liability under the federal income tax laws, which directed the attorneys to produce relevant documents of the taxpayers' accountants that had been given to the attorneys by the taxpayers for the purpose of obtaining legal advice in the tax investigation, violated the taxpayers' Fifth Amendment privilege against self-incrimination. In order to decide the propriety of the summonses, as they related to the assertion of the attorney-client privilege, the Court stated that it was necessary to decide the question now before us, but refused to do so on the grounds that the papers were not "private" ones; *i.e.*, they were not prepared by the taxpayer. Nevertheless, the Court stated:

> "The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the

taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v United States*, 354 US 118, 125, 1 L Ed 2d 1225, 77 S Ct 1145 (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof."

425 U.S. at 410, 48 L.Ed. 2d at 56, 96 S.Ct. at 1581. What *Fisher* reaffirms is that compulsion, incrimination, and testimonial communication must all exist before a claimant can invoke the protection of the Fifth Amendment privilege. That the filing of an income tax return is testimonial was established in *Garner v. United States*, 424 U.S. 648, 656, 47 L.Ed. 2d 370, 378, 96 S.Ct. 1178, 1183 (1976), wherein the Court stated: "The information revealed in the preparation and filing of an income tax return is, for purposes of Fifth Amendment analysis, the testimony of a 'witness,' as that term is used herein." There can be no serious doubt that an order to produce is compulsory. *Fisher v. United States, supra; see also Rey v. Means, In & For Tulsa Cty.*, 575 P. 2d 116 (1978). Thus, the essential inquiry becomes whether the information sought is incriminating. Here, defendant has been accused of diverting, converting, and misusing corporate assets. The diversion and conversion are surely susceptible to criminal punishment. Submission of the tax returns would surely furnish a link in the chain leading down the road to criminal prosecution. The privilege against self-incrimination does not protect defendant from prosecution, but it does protect him from being a witness against himself. Inasmuch as *Boyd v. United States*, 116 U.S. 616, 29 L.Ed. 746, 6 S.Ct. 524 (1886), protects against such disclosures, it is still the law of the land, and defendant could not be held in contempt for failure to furnish copies of his federal and state income tax returns. Furthermore, he could not be required to write out a list of his personal assets, *see Marchetti v. United States*, 390 U.S. 39, 19 L.Ed. 2d 889, 88 S.Ct. 697 (1968), and the contempt citation could not be upheld on that ground. Counsel for the plaintiffs and the receivers contend that defendant has waived the privilege against self-incrimination pointing to *Garner*

*v. United States, supra.* We hold that he has not. *Garner* did not present a situation where defendant was forced to produce the disputed tax returns. In *Garner*, the government already had the tax return.

[5]    We need not decide the propriety of the 28 February 1979 order, since in light of our foregoing text, it could not stand. We are compelled, however, to address defendant's contentions that the trial court erred in appointing the receivers, in not considering his motion to alter and amend the findings of fact and conclusions of law in the 9 February order, and in not hearing his motion to vacate.

In denying to hear defendant's motions at the show cause hearing, the trial court stated:

> "COURT: We can't conduct a very full hearing on those things, Mr. DeLaney, I have not got copies of those, I don't have the files here. They were not scheduled for a hearing at this time.
>
> MR. DELANEY: Judge, I'm in this position, I know—I feel that these are matters which should be reviewed."

In refusing to hear these matters, the trial court did not commit error. The sole question before him to be adjudicated at a hearing of an order to show cause why defendant should not be held in contempt for violation of the court's decree was whether the decree had been violated, and the court correctly disregarded hearing anything else. *Rose's Stores v. Tarrytown Center, supra; Williamson v. High Point*, 214 N.C. 693, 200 S.E. 388 (1939). Since defendant's motions are still pending, they may be scheduled for hearing on remand. Other questions presented need not be decided in light of our foregoing text.

The orders adjudging defendant in contempt are

Reversed.

Judges CLARK and ARNOLD concur.