113 Wis.2d 183 (1983)
335 N.W.2d 420
IN MATTER OF a SUBPOENA DUCES TECUM ISSUED TO B.M., Movant-Petitioner,
v.
STATE of Wisconsin, John Doe and other persons unknown, Plaintiffs-Respondents.
No. 82-2268.
Court of Appeals of Wisconsin.
Submitted on briefs April 13, 1983.
Decided May 17, 1983.
*184 For the movant-petitioner the cause was submitted on the brief of Stephen M. Glynn of Shellow, Shellow & Glynn, S.C., of Milwaukee.
For the plaintiffs-respondents the cause was submitted on the brief of Bronson C. La Follette, attorney general, and Peter Cannon, assistant attorney general.
Before Wedemeyer, P. J., Decker and Moser, JJ.
WEDEMEYER, P. J.
B.M.[1] appeals from an order of the trial court requiring him to produce his copies of his federal and state income tax returns and schedules from January 1, 1972, to the present pursuant to a subpoena duces tecum issued under the authority of a John Doe proceeding. We hold that the order violates the fifth amendment[2] of the Constitution of the United States and article I, section 8(1)[3] of the Wisconsin Constitution because it compels B.M. to incriminate himself. We therefore reverse the order of the trial court.
On September 30, 1981, a subpoena was issued requiring B.M. to attend a John Doe hearing. The subpoena also required B.M. to produce a list of designated records *185 at the hearing, including personal copies of his federal and state income tax returns, schedules and work papers from January 1, 1972, to the present. B.M. filed a motion to quash the subpoena, claiming that it compelled him to testify against himself, that the state had not shown the relevance of the returns to the John Doe proceeding and that 26 U.S.C. § 6103 (1981) barred the state from obtaining copies of a witness's tax returns. The trial court refused to quash the subpoena, and B.M. appealed.
B.M. argues three issues on appeal:
1. whether 26 U.S.C. § 6103 (1981) bars the state from obtaining copies of a witness's tax returns by subpoena duces tecum in a John Doe proceeding;
2. whether the trial court erred in failing to require that the relevancy of the tax returns be disclosed to B.M.; and,
3. whether the fifth amendment to the United States Constitution and article I, section 8(1) of the Wisconsin Constitution permit B.M. to refuse to produce his copies of his federal and state income tax returns and accompanying schedules in response to a subpoena duces tecum.

26 U.S.C. § 6103 (1981)
Since 26 U.S.C. § 6103 (1981) forbids the state agency involved in this case from obtaining B.M.'s federal tax return from the federal government, B.M. argues that it protects him from disclosing to the state agency his copies of his federal and state tax returns. We disagree.
[1]
The general rule enunciated in 26 U.S.C. § 6103(a) (1981) is that returns are confidential and recordkeepers for the federal government may not disclose returns except as provided by statute. A return is defined as any tax or information return, declaration of estimated tax, or claim for refund, and schedules, attachments or lists *186 supplemental to or part of the filed return. 26 U.S.C. § 6103(b) (1) (1981). By its definition, a return is not a copy kept by a taxpayer. See also Heathman v. United States District Court, 503 F.2d 1032, 1035 (9th Cir. 1974); Maggio v. Hynes, 423 F. Supp. 144, 145-46 (E.D. N.Y. 1976); cf. Town Taxi v. Police Commissioner, 387 N.E.2d 129, 136 (Mass. 1979). We therefore hold that 26 U.S.C. § 6103 does not protect B.M. from producing his copies of his federal and state tax returns in response to a subpoena duces tecum issued by the state agency involved in this case.

RELEVANCY
In State v. Washington, 83 Wis. 2d 808, 843, 266 N.W.2d 597, 614 (1978), our supreme court stated: "The John Doe judge, and the court ordering production of the documents, have to determine whether the documents sought are relevant to the topic of inquiry. The test is whether the information sought is in some manner connected with the suspected criminal activity under investigation."
[2]
The topic of inquiry in this case is known to the trial court. The information sought is copies of tax returns of B.M. The subpoena asked for the copies of the returns to examine expenses claimed by B.M. The information relates to the suspected criminal activity since it may show whether or not and in what manner B.M. may have violated state criminal law. The trial court specifically found the documents relevant to the topic of inquiry. After reviewing the record on appeal, we cannot conclude that the trial court erred in refusing to disclose the relevancy of the returns to B.M. The trial court complied with the precepts of Washington, id., and we cannot hold it erred in deciding this issue.

*187 SELF-INCRIMINATION
In Fisher v. United States, 425 U.S. 391 (1976), the United States Supreme Court held that the compelled production of documents from the taxpayer's attorney did not implicate any fifth amendment privilege the taxpayer might have from being compelled to produce them himself. Id. at 402. The Court noted that it was not deciding the issue in the present case, that is, "[w]hether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession . . . ." Id. at 414.
The fifth amendment is applicable, according to Fisher, only where the elements of compulsion, testimony and incrimination are present. See id. at 410; see also Lowder v. All Star Mills (Lowder I), 263 S.E.2d 624, 629 (N.C. App. 1980), rev'd, 273 S.E.2d 247 (N.C. 1981); Rey v. Means, 575 P.2d 116, 119 (Okla. 1978). The state concedes that the subpoena duces tecum fulfills the element of compulsion. The parties also agree that production of the records by B.M. may incriminate him. They do disagree, however, over whether producing his own copies of federal and state income tax returns is testimony of B.M. for purposes of the fifth amendment.
In discussing what is testimony, the Supreme Court stated in Fisher:
The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead *188 depend on the facts and circumstances of particular cases or classes thereof. Fisher, supra, 425 U.S. at 410. [Citation omitted.]
In Rey v. Means, 575 P.2d 116 (Okla. 1978), the Oklahoma Supreme Court cited Fisher and noted that "[t]he act of producing the documents could be `testimonial' on two grounds: Production both implicitly authenticates the documents as those subpoenaed and admits the existence of the documents and the control or possession of them by the party subpoenaed." [Footnote omitted.] Id. at 119. The court in Rey also noted that two suggestions of authentication were (i) the document produced is the document demanded, and (ii) production is a voucher for the accuracy or truthfulness of the contents. Id. Implied authentication was testimony for fifth amendment purposes. See id. The decision in Rey was to grant a writ of prohibition against enforcement of the subpoena and to remand the cause to the trial court with directions to hold an in camera hearing in light of its discussion of Fisher, supra.
In the case of In re Bon Voyage Travel Agency, 449 F. Supp. 250 (N.D. Ill. 1978), Joseph A. Heitzinger, a sole proprietor whose company was involved in bankruptcy proceedings, refused to produce his copies of his federal tax returns, claiming a fifth amendment privilege. The bankruptcy judge filed a certificate seeking to hold Heitzinger in contempt. The district court vacated the certificate and determined that Heitzinger's refusal to surrender his tax returns was not in violation of federal bankruptcy law (11 U.S.C. § 69(a)), since it concluded that Heitzinger had a fifth amendment privilege not to produce his copies of tax returns. See id. at 254. The district court did not discuss the implications of Fisher, supra, in its decision.
In Lowder I, supra, the Court of Appeals of North Carolina held that an order of the trial court requiring *189 W. Horace Lowder to provide the plaintiffs (Malcolm M. Lowder, Mark T. Lowder and Dean A. Lowder) complete copies of his personal federal income tax returns and state income tax returns, including schedules, violated the fifth amendment privilege against compelled self-incrimination. The court of appeals determined that since the Supreme Court of the United States had said in Garner v. United States, 424 U.S. 648, 656 (1976) that "[t]he information revealed in the preparation and filing of an income tax return is, for purposes of Fifth Amendment analysis, the testimony of a `witness,'" the element of testimony was satisfied.[4]Lowder I, supra, 263 S.E.2d at 629. The Supreme Court of North Carolina reversed the court of appeals's decision in Lowder v. All Star Mills (Lowder II), 273 S.E.2d 247 (N.C. 1981). The court held that production of copies of tax returns was not privileged because (i) the returns were not prepared under any physical or mental coercion, and (ii) since the copies of an individual's tax returns were not strictly private documents, but at most, semi-private, authentication resulting from compelled production of the documents added little to the knowledge already possessed by the trial court and therefore was not of sufficient testimonial moment to rise to fifth amendment protection. Id. at 263-64.
*190 The last case discussing the issue is In re Grand Jury Empanelled March 19, 1980, 541 F. Supp. 1 (D. N.J. 1981), aff'd, 680 F.2d 327 (3rd Cir. 1982). There the Federal District Court of New Jersey held that requiring the witness to produce documents violated his fifth amendment privilege against compelled self-incrimination because the mere act of producing the records may be a communication of testimonial significance as an admission that the subpoenaed documents exist and are authentic. Id. at 3. It found, however, that copies of tax returns were records required to be kept by law and thus outside the scope of constitutional protection. Id.
[3, 4]
Here we conclude that the production by B.M. of his copies of his federal and state income tax returns and schedules would concede the existence of the returns, and his possession of those documents would acknowledge the contents in the returns as true. Under the facts of this case, we hold that the "tacit averments" of B.M. are testimonial, and thus determine that the fifth amendment privilege against self-incrimination and its Wisconsin counterpart are applicable to this case. B.M. enjoys the federal and state constitutional privilege of refusing to produce his copies of his personal state and federal tax returns from January 1, 1972, to the present.
[5]
The state lastly argues that even if the elements of compulsion, testimony and incrimination are fulfilled, tax returns are not private papers, and the privilege does not apply. The source for this argument is Shapiro v. United States, 335 U.S. 1 (1948). In Shapiro, the United States Supreme Court held that the fifth amendment did not apply to the production of records required to be kept by law. Id. at 32-33. We determine that the holding in Shapiro is not applicable to this case.
Several courts have denominated tax returns as quasi-public papers or as records required to be kept by law, *191 see, e.g., Lowder II, supra, at 264; In re Grand Jury Empanelled March 19, 1980, supra, at 3. Lowder II, supra, held that these papers were not private because the law required the original tax return to be filed. As noted above, however, 26 U.S.C. § 6103 (1981), generally requires that these returns be kept confidential. While there are exceptions listed in 26 U.S.C. § 6103 to this general rule of confidentiality, none of these exceptions would permit the state agency involved in this case to obtain the return from the government. The argument that, because the door is somewhat ajar it ought to be fully opened, does not appeal to this court. The mere fact that some parties may have access to copies of one's tax returns for other reasons does not mean that one's copies of those returns are also fair game for production, nor does it mean that the document has lost its private character. Cf. Rey, supra, 575 P.2d at 120.[5] The district court in In re Grand jury Empanelled March 19, 1980, supra, held, without citing any statutory authority, that tax returns were records required to be kept by law. Simply put, this is not the case. There is no federal or state law requiring one to keep copies of his tax returns in case of audit or for any other reason. We decline to hold that an individual's copies of his federal and state income tax returns and schedules are quasi-public records or records required to be kept by law. We hold the fifth amendment privilege against self-incrimination and its *192 Wisconsin counterpart (article I, section 8(1)) permit B.M. to refuse to produce his own copies of his federal and state income tax returns at the John Doe proceeding.
By the Court.  Order reversed.
NOTES
[1] Counsel for B.M. filed a motion with this court to preserve the secrecy of the John Doe proceeding by masking his name. The court granted the motion by order dated December 16, 1982.
[2] In pertinent part, the fifth amendment of the United States Constitution states: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."
[3] The pertinent section of the Wisconsin Constitution, article I, section 8(1), states in part: "No person . . . may be compelled in any criminal case to be a witness against himself or herself."
[4] In Garner v. United States, 424 U.S. 648 (1976), Garner was indicted for a conspiracy to use interstate transportation and communication facilities to "fix" sporting events. Id. at 649. Garner filed a tax return and listed his occupation as professional gambler. At trial, the government wished to introduce his return as evidence that Garner knew about the gambling business. The Supreme Court held that information revealed in a tax return was testimony for purposes of fifth amendment analysis. In the present case, the testimony is not the writing of information onto a tax return, but the act of producing the documents. For this reason, we cannot agree with the North Carolina Court of Appeals's analysis in Lowder I. See also Fisher v. United States, 425 U.S. 391, 410 n. 11 (1976).
[5] The court in Rey v. Means, 575 P.2d 116, 120 (Okla. 1978), discounts the applicability of the private-public distinction since it reads current fifth amendment case law as dismissing any consideration of privacy in determining the applicability of the fifth amendment to the facts of a particular case. It therefore did not attempt to analyze the effect of Shapiro v. United States, 335 U.S. 1, 32-33 (1948) regarding the fifth amendment privilege against self-incrimination. We are not inclined to dismiss altogether the holding of Shapiro that those keeping required records are not afforded fifth amendment protection.