In the Matter of the Refusal of Gary REIF and Bradley Reif to Comply With Lawful Subpoena.

STATE of South Dakota, ex rel. Ronald J. SCHREINER, Secretary of Revenue, Petitioner and Appellee,

v.

Gary REIF and Bradley Reif, Respondents and Appellants.

No. 17360.

Supreme Court of South Dakota.

Argued Sept. 9, 1991.

Decided Dec. 11, 1991.

David D. Wiest, Asst. Atty. Gen., Pierre, for petitioner and appellee; Mark Barnett, Atty. Gen., Pierre, on brief.

Reed C. Richards of Richards & Richards, Deadwood, for respondents and appellants.

AMUNDSON, Justice.

Gary and Bradley Reif (Reifs) appeal the decision of the trial court entering a judgment of contempt for failure to comply with a subpoena duces tecum issued by the Secretary of the State Department of Revenue (Department). We affirm.

## FACTS

Gary Reif and Bradley Reif are residents of Lawrence County, South Dakota. As a result of an audit of a third party, Department's auditor discovered payments made by third party to Reifs as consideration for construction services performed by them. Department's auditor mailed a notice of intent to audit to both Gary and Bradley Reif on April 7, 1989. In order to commence the audit, the auditor requested that Reifs provide their books and records relating to their business activities for an audit in regards to the contractor's excise tax imposition on gross receipts. SDCL ch. 10–46A. Reifs refused to provide any records to Department.

After Reifs' refusal to permit any inspection and audit of their books and records, the Secretary of Department (Secretary) issued subpoenas duces tecum to both Reifs. These initial subpoenas were issued on June 21, 1989, and required Reifs to present business records to representatives of Department no later than July 12, 1989. Reifs failed to comply with the initial subpoenas and Department again issued subpoenas duces tecum on January 9, 1990. The second subpoenas required Reifs to present business records to Department no later than January 26, 1990. Again, Reifs refused to comply with the subpoenas. Department was subsequently informed by Reifs' attorney that his clients would provide none of the requested documentation unless they were granted immunity from any possible criminal prosecution based upon the production of their business records.

Following Reifs' refusal to comply with the subpoenas duces tecum, Department attempted unsuccessfully to determine Reifs' tax liability by alternate means. Department found it difficult to isolate Reifs' excise taxable receipts from other sources of income, and thus determined that without Reifs' records, Department could not calculate their tax liability with any reasonable degree of certainty.

The trial court held two separate hearings on Department's order to show cause for contempt and struck part of the original subpoenas, which striking modified the subpoenas [1] so that they provided for the production of the following records:

(1) All bank records for all business accounts used during the period covered by said Subpoena, including bank statements, deposit slips, cancelled checks, and deposits from loan proceeds and advancements;

(2) All bank records for all personal accounts if any business income was deposited directly therein or any business expenses were paid directly therefrom;

(3) Billing invoices to customers for work performed and all written contracts, including change orders for work performed;

(4) Purchase invoices for equipment, materials, repairs to equipment and any other tangible personal property, or services purchased. Any documentation, memoranda or other written evidence of the value of any owner furnished materials installed in the completion of any jobs or projects;

(5) All ledgers or books of record showing income, expenses and other disbursements and depreciation schedules; and

(6) All contractors' exemption certificates or other documentation to show reduction or exemption of gross receipts from taxation.

The trial court ordered Reifs to produce the above subpoenaed documents or be held in contempt.

---

1. This modification deleted the demand for production of their income tax returns and personal accounts if not used for business purposes.

The first hearing was held August 14, 1990, and the second was held November 1, 1990.

Reifs acknowledged to the trial court that they were in possession of at least some of the subpoenaed documents and had present ability to comply with the trial court's order. Reifs refused, however, to comply with the trial court order, claiming it violated their rights against self-incrimination provided under the constitutions of South Dakota (Article VI, Section 9) and the United States of America (Fifth Amendment).

The trial court entered a judgment of contempt which was stayed pending the outcome of this appeal. The trial court also required the subpoenaed documents to be placed under seal with the court pending determination of an appeal.

## ISSUES

1. Whether the State's Subpoenas Duces Tecum violate Reifs' constitutional rights against self-incrimination?
2. Whether SDCL 10–45–45 is unconstitutionally vague?
3. Whether the trial court had the authority to order all subpoenaed records submitted to the court and sealed as a condition of the stay of execution pending appeal?
4. Whether the trial court erred in not making an in-camera inspection of the subpoenaed records?

## ANALYSIS

1. *Self-incrimination*

■ We first examine Reifs' claim that Department's subpoenas duces tecum violate their constitutional right against self-incrimination. They assert Department's

request would compel them to produce documents which might tend to incriminate them.

Reifs do not dispute that they have performed services which are subject to contractors' excise tax and use tax imposed by SDCL chs. 10–46A and 10–46. By performance of such services, Reifs engaged in a taxable business and were thus required to maintain records, receipts and invoices relating to the conduct of this business pursuant to SDCL 10–45–45. This statute also authorizes Department's inspection of records, providing:

> Every person subject to tax under this chapter shall keep records and books of all receipts and sales, together with invoices, bills of lading, copies of bills of sale, and other pertinent papers and documents. Such books and records and other papers and documents shall, at all times during business hours of the day, be subject to inspection by the secretary of revenue or his duly authorized agents and employees *to determine the amount of tax due.* Such books and records shall be preserved for a period of three years unless the secretary of revenue, in writing, authorized their destruction or disposal at an earlier date.[2] (Emphasis added.)

In light of the fact that Reifs were required by SDCL 10–45–45 to maintain business records, we believe our holding in *Carr v. S.D. Dept. of Labor, Unempl. Ins.,* 355 N.W.2d 10 (S.D.1984), is dispositive.[3] In *Carr,* the Department of Labor sought information concerning employees of Carr for the purposes of computing unemployment insurance tax. Carr was required to

2. The secretary of revenue is also authorized to investigate the character of Reifs' business pursuant to SDCL 10–59–5, 10–46–39, 10–46–43 and 10–46A–7.

3. We have considered the cases upon which Reifs rely in asserting the privilege against self-incrimination and find Reifs' reliance to be misplaced. The case of *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), specifically excludes those instances where business documents and records are required by law to be kept. *Doe,* 465 U.S. at 607, 104 S.Ct. at 1239. *United States v. Cohen,* 388 F.2d 464 (9th Cir.1967), involved those instances where the

records and documents were not open to government inspection in the first place. *Cohen,* 388 F.2d at 468. *United States v. Lang,* 792 F.2d 1235 (4th Cir.1986), *Dorgan v. Kouba,* 274 N.W.2d 167 (N.D.1978) and *B.M. v. State,* 113 Wis.2d 183, 335 N.W.2d 420 (App.1983), all considered instances where the requested records were not required by law to be kept. Certainly these cases raise important issues about the privilege against self-incrimination. None of them apply, however, to the situation when the records were required by law to be maintained and subject to inspection, as was the case here.

maintain such information pursuant to SDCL 61–3–2. Carr refused to cooperate with the Department of Labor and the department subpoenaed the information.

Carr refused to comply with the subpoena and the Department of Labor sought judicial enforcement. This court addressed Carr's self-incrimination argument as follows:

> In *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), Mr. Justice Hughes, after noting that public officials are not protected from producing public records by constitutional privilege against self-incrimination, stated:
>
>> The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation.... There the privilege which exists as to private papers, cannot be maintained.

*Carr*, 355 N.W.2d at 12 (citation omitted). We found Carr was required, under SDCL 61–3–2, to keep and preserve the records sought and eventually produced. *Carr*, 355 N.W.2d at 12. We also stated in *Carr*, "SDCL 61–3–2 also states that the type of records involved here 'shall be open to inspection ... by the secretary [of Labor] or his authorized representatives....' They were not protected by Carr's Fifth Amendment rights against self-incrimination." *Id.*

In the present case, Department is seeking Reifs' records to determine their tax liability, if any. The subpoenaed records are clearly required to be preserved pursuant to SDCL 10–45–45. Because these are records required by law to be kept by the taxpayer, pursuant to our holding in *Carr*, they are not records in which a taxpayer may claim the privilege of self-incrimination.

### 2. *Vagueness*

■ We next turn to Reifs' claim that SDCL 10–45–45 is unconstitutionally vague. When this court reviews the constitutionality of a law, it will be upheld unless it is clearly and unmistakably unconstitutional. *AFSCME Local 1922 v. State*, 444 N.W.2d 10 (S.D.1989); *State v. Big Head*, 363 N.W.2d 556 (S.D.1985); *State v. Morrison*, 341 N.W.2d 635 (S.D.1983).

■ It is settled law in this jurisdiction that statutes are presumed constitutional. *Cert. of Question From U.S. Dist. Court*, 372 N.W.2d 113 (S.D.1985). All presumptions are in favor of the constitutionality of a statute and continue so until the contrary is shown beyond a reasonable doubt. *Big Head*, 363 N.W.2d at 559; *Independent Community Bankers Ass'n v. State*, 346 N.W.2d 737 (S.D.1984); *Crowley v. State*, 268 N.W.2d 616 (S.D.1978).

■ This court has previously set the standard of a void for vagueness claim as follows:

> Defendant contends that the statute is void for vagueness and therefore violates his right to due process. Statutes violate due process when the prohibited act or omission is expressed in terms so vague that reasonable people of ordinary intelligence might apply them differently....

*Big Head*, 363 N.W.2d at 559. We thus examine the statute to ascertain if a reasonable person or person of common intelligence would understand the statute's meaning.

We recently addressed the clarity of SDCL 10–45–45 in *Karras v. State, Dept. of Revenue*, 441 N.W.2d 678 (S.D.1989). In *Karras*, we found the statute's purpose was clear, and mandated keeping sufficient records so Department could verify the accuracy of taxes collected and remitted to the state. *See Karras*, 441 N.W.2d at 680.

In light of our holding in *Karras*, we believe SDCL 10–45–45 provided sufficient definiteness to Reifs. They are required under the statute to maintain business records "to determine the amount of tax due." If there are business records which are not needed to determine the amount of tax due, they do not fall within the intent of the statute. Reifs, as any other taxpayer subject to the contractor's excise tax, were therefore required to maintain sufficient business records for Department to

inspect for determining the amount of tax due, if any.

Reifs focus mainly on the "other pertinent papers and documents" language in the statute. When considering this verbiage in conjunction with the other portions of the statute, it leads to only one reasonable conclusion, that a person subject to this tax is required to maintain records and books which reflect the sales and receipts from the services rendered by them. Of course, it goes without saying that this statute does not mandate a uniform book or record-keeping method for each business, subject to the statutory provisions. Each entity, subject to this record-keeping statute is free to set up their own business accounting procedure whether it is double entry, single entry or a notebook. If, during an audit, Department determines the records maintained are not adequate, Department has the option to employ other auditing techniques to determine the amount of tax owed. This option can obviously prove to be a disadvantage to the taxpayer, since properly maintained records could likely result in a lower tax determination than the alternate auditing techniques. *Karras, supra.*

A statute must be construed in total in order to determine whether or not it is couched in vague terms. *Border States Paving, Inc. v. Dept. of Revenue,* 437 N.W.2d 872 (S.D.1989). Such a review of this statute can only lead to one conclusion; namely, this statute is expressed in terms which a reasonable person of ordinary intellect can understand as requiring a person subject to the tax to maintain records which verify their taxable sales and receipts. We find that Reifs have failed in establishing that SDCL 10–45–45 is unconstitutionally vague.

We believe it is premature at this point to rule on Reifs' claim that Department is not entitled to records beyond the three-year maximum provided in SDCL 10–45–45. At the current procedural juncture, the subpoenas have been modified to the three-year maximum allowed by statute. No action, either civil or criminal, has been filed against Reifs. In the absence of any for-mal action against Reifs, we think it is clear that Department is entitled to production of records for three years back from the issuance of the original subpoena.

### 3. *Sealing of Records*

■ As stated previously, Reifs have no self-incrimination rights on the subpoenaed records. We therefore hold that the trial court acted within its authority when it ordered all subpoenaed records submitted under seal to the court as a condition of the stay of execution pending appeal in light of Reifs' admission of possession of the requested records.

The trial court has the inherent power to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction. 20 Am.Jur.2d *Courts* § 79 (1965) (footnote omitted). This includes the power "to take appropriate action in cases of contempt...." *Id.*

SDCL 21–34–5 provides the court shall have jurisdiction over whatever administrative details "as to it may appear warranted for the purpose of a full hearing and presentation of the facts and laws involved ... so that the matter may be fairly and correctly determined." The trial court was preserving the documents to ensure a full hearing by requiring Reifs to produce the documents under seal. By requiring this, the trial court ensured that the documents would be preserved intact pending the outcome of this appeal. Not only was this within the trial court's inherent powers, but it was necessary to ensure a full and fair hearing. The trial court has the authority to ensure preservation of the records pending appeal and, in so doing, did not exceed its authority in view of Reifs' admission that they possessed some of the documents subpoenaed.

Under our holding, we deem it unnecessary to address Reifs' remaining issue.

The decision of the trial court is affirmed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

This is another "statist" opinion, exalting the authority of a state agency, here the Secretary of Revenue of the State of South Dakota, over the constitutional rights (both state and federal) of citizens. Specifically, I dissent for these reasons:

1. Wording in SDCL 10–45–45, the controlling statute in this case, is materially different from SDCL 61–3–2, the important statute in *Carr*.

2. Department of Revenue inceptually began a fishing expedition by attempting to get *all* business and *all* private records, by subpoena duces tecum, in what it designated a "civil audit." Citizens refused to comply *unless* given immunity from criminal prosecution.* State simply could have expressed: "We give you immunity—now give us the records." State is deceitful.

3. Original subpoena duces tecum was overly broad in that personal records and income tax records were demanded and for a period of years beyond the statutory three year requirement. SDCL 10–45–45.

4. Trial court, realizing it had gone beyond the law in requiring all personal records, attempted to sanitize its improvident order. By this time, citizens were already, defacto, in contempt of court.

5. Department of Revenue, until defense counsel stepped in, was setting up citizens for criminal prosecution under SDCL 10–45–48.1. Its practices were sharp and unlawful. *See, State Dept. of Revenue v. Oliver*, 636 P.2d 1156 (Alaska 1981). Said statist agency should not be rewarded for its inceptual aggressive, unconstitutional actions. Initially, the Reifs were threatened with imprisonment if they did not comply. Is this Department enforcer, jury, and judge?

6. Majority has referred to *United States v. Doe* [465 U.S.] at 607 [104 S.Ct. at 1239]; it has not read nor interpreted that case's holding(s) correctly. Read page 117 thereof. If my interpretation is wrong, then for my authority I rely upon the statement of Mr. Justice Marshall, with whom Mr. Justice Brennan joined, at page 619 thereof, together with the special writing of Mr. Justice Stevens, at pages 619, 620, 621, 622, and 623 [104 S.Ct. at pages 1245, 1246, 1246–47, 1247, and 1247].

7. The act of *producing* the documents has, as Mr. Justice Stevens points out, communicative aspects which warrant Fifth Amendment protection. *Fisher v. United States*, 425 U.S. 391, 414, 96 S.Ct. 1569 [1583], 48 L.Ed.2d 39 (1976).

8. Had the trial court reviewed the documents, there would have existed precompliance review. *See, Minn. State Bar Ass'n. v. Divorce Assistance Ass'n.*, [311 Minn. 276] 248 N.W.2d 733, 738 (1976); *Lieb v. Henry*, 99 A.D.2d 757, 471 N.Y.S.2d 674 (1984). At a minimum, this case should be remanded for an in-camera review for the requested documents.

Art. VI, § 9, South Dakota Constitution provides: No person shall be compelled in a criminal case *to give evidence against himself* or be twice put in jeopardy for the same offense. Amendment 5, Bill of Rights, United States Constitution is different; inter alia, it expresses: "... nor shall be compelled, in any criminal case, *to be a witness against himself*, ..." *State v. Myers*, 464 N.W.2d 608, 611–612 (S.D.1990) (Henderson, J., concurring in part; dissenting in part); *State v. Lanier*, 452 N.W.2d 144, 148 (S.D.1990) (Henderson, J., dissenting); *State v. Neville (II)*, 346 N.W.2d 425, 432 (S.D.1984) (Henderson, J., concurring in part and dissenting in part). In *Neville*, at 432, I expressed:

This Nation is a union of states and each state cannot depend upon the United States Supreme Court for constitutional direction on its state constitution. This state must keep within the intention and

---

* Citizens offered to provide the subpoenaed records for an in-camera review by the trial court but trial court refused the offer.

spirit of its constitution adopted in 1889. The United States Constitution obtained final ratification in 1791. Where there is a difference, we should stand up and state the difference and rule in accordance with the difference.

In said cases, with trembling hand and pursed lips did I attempt to pen these constitutional differences. Alas, this distinction has not, as yet, been met with approval of academic warmth by my Brothers. Come the revolution.