WILLIAM V. BRADLEY, Individually and as President of the International Longshoremen's Association and as President of United Marine Division, ILA, Local 333, et al., Respondents, v. JOSEPH O'HARE, Individually and as President of Federal Labor Union No. 24948 New York, et al., Appellants, et al., Defendants.

First Department, November 13, 1956.

*Herman E. Cooper* of counsel (*H. Howard Ostrin* and *Eugene N. Sosnoff* with him on the brief; *Herman E. Cooper,* attorney), for appellants.

*Martin Markson* of counsel (*Louis Waldman* with him on the brief; *Waldman & Waldman,* attorneys), for respondents.

VALENTE, J. In a suit between two labor unions which seeks an accounting of union funds allegedly misappropriated, the order appealed from strikes the answer of the defendant Joseph O'Hare, individually and as an officer of the defendant union, unless he (1) submits to further examination before trial; (2) specifically answers " Yes " or " No " to three questions he was orally directed to answer by a Justice presiding in Special Term; and (3) produces books and records, as provided by section 296 of the Civil Practice Act, as directed in an order for his examination before trial, dated November 23, 1955.

The appellant O'Hare does not dispute his obligation to submit to further examination nor to produce the books and records—except as they may infringe on his privilege against self incrimination—as provided by the order for his examination. Thus our attention is confined to a consideration of his refusal, under a claim of privilege against self incrimination, to answer three questions. The three questions are:

1. " Captain O'Hare, do you have the bank books, records, statements, saving bank books of Local 333, ILA, as of May 1954?"

2. " Did Local 333, ILA, in May of 1954, own any stocks or bonds?"

3. " Did Local 333, ILA, in May of 1954, own any boats?"

It is contended by the respondents that the claim of privilege as to these questions was properly overruled since O'Hare may not assert the privilege with respect to union property, books and records or refuse to answer questions as to their location. Moreover, it is contended that O'Hare waived his privilege by producing some of the books and responding to questions with respect thereto.

Before resolving this problem, an examination must be made of the circumstances giving rise to the questions in issue the defendant has been directed to answer.

The plaintiffs herein are officers and members of the International Longshoremen's Association (in the interest of brevity, hereinafter referred to as ILA) while the defendants are the officers and members of the Federal Labor Union No. 24948, New York, New York United Marine Division, Local 333, AFL (hereinafter referred to as Local 333 AFL).

The gravamen of the complaint is that the individual defendants, in violation of their trust as officers of Local 333, wrongfully affiliated it with the AFL and, at the same time, misappropriated its assets. It is charged that the defendants and others conspired to deprive the plaintiffs of their property and

that in furtherance of that conspiracy misrepresented the fact of a disaffiliation and the withdrawal of Local 333 from the ILA. Damages and the repossession of various funds, assets and properties of Local 333 are sought on the theory that these funds reverted to the ILA because of this conduct.

The defendants interposed an answer consisting of a general denial and a plea of waiver and laches following which the order for the examination of the defendants before trial was obtained. At an adjourned session of the examination of the defendant O'Hare, he was asked, among other quaeres, 11 questions concerning the location of books, records and property which is the property that he and his codefendants are charged with having misappropriated for their individual benefit and in violation of their fiduciary capacity. He refused to answer these questions on the ground of self incrimination.

Upon application to the Justice at Special Term, he was sustained in his refusal to answer 8 of these questions, but was directed to answer the 3 questions heretofore mentioned. Persistence in refusing to answer resulted in the order appealed from herein.

This appeal presents another facet of the recurring problem of the extent of the constitutional privilege against self incrimination. Unlike most of the cases which have received the attention of our highest courts, the instant case does no involve a criminal prosecution or the inquisitorial action of a legislative committee. The claim of privilege here is interposed in an examination before trial in a civil suit.

The constitutional provisions bestowing the privilege against self incrimination (N. Y. Const., art. I, § 6; U. S. Const., 5th Amendt.) have consistently been construed by the courts in a broad and liberal spirit. Chief Justice WARREN in *Quinn* v. *United States* (349 U. S. 155) stated at page 162: "To apply the privilege narrowly or begrudgingly—to treat it as an historical relic, at most merely to be tolerated—is to ignore its development and purpose." This right to refuse to testify has been recognized as "one of the most valuable prerogatives of the citizen." (*Brown* v. *Walker,* 161 U. S. 591, 610.)

In *Ullmann* v. *United States* (350 U. S. 422) at page 426, Mr. Justice FRANKFURTER stated: "It is relevant to define explicitly the spirit in which the Fifth Amendment's privilege against self incrimination should be approached. This command of the Fifth Amendment ('nor shall any person . . . be compelled in any criminal case to be a witness against himself . . .') registers an important advance in the development of our liberty—'one of the great landmarks in man's struggle

to make himself civilized.' Time has not shown that protection from the evils against which this safeguard was directed is needless or unwarranted. This constitutional protection must not be interpreted in a hostile or niggardly spirit."

On this rationale O'Hare is entitled to have his claim of privilege in this case considered in strict observance of the constitutional protection given him. It has long been accepted that the barrier of possible incrimination may be raised not only against an admission of guilt, but it also may be asserted when there will be involved the furnishing of a lead or link from which such evidence may be obtained. (*Counselman* v. *Hitchcock,* 142 U. S. 547.) In *Hoffman* v. *United States* (341 U. S. 479) at pages 486 and 487, the court stated: " To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

The complaint makes serious charges of misconduct, viz., a breach of trust and fiduciary relationship and specifically accuses the defendants of having " misappropriated and misused said funds, assets and property of said plaintiffs for the benefit of the individual defendants and the defendant Local 333 AFL." The questions asked form part of the inquiry into the existence, location and possession of the very property which the defendants are accused of having misappropriated and misused. There is real danger that should O'Hare be obliged to answer those questions, criminal liability may be disclosed or that the answers may provide leads to possible involvement in crime. The right of a witness in a civil suit to be protected against any form of self incrimination under legal compulsion has long been recognized. This is so whether the incrimination inheres immediately and clearly in the answers of the witness, or whether the answers may point to a trail that it can reasonably be apprehended will lead to incrimination. (*Counselman* v. *Hitchcock, supra,* p. 562; *People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253; Civ. Prac. Act, § 355.) The same right is available to a witness in an examination before trial. (*American Blue Stone Co.* v. *Cohn Cut Stone Co.,* 97 Misc. 428, affd. 177 App. Div. 952; *Wiener* v. *Wiener,* 283 App. Div. 950.)

Cases similar to *United States* v. *White* (322 U. S. 694); *Rogers* v. *United States* (340 U. S. 367) do not preclude sustaining the privilege herein. In those cases an individual was

directed by subpœna duces tecum to produce books held in a representative capacity. It was held that the privilege against self incrimination would not apply to the requirement to produce the books even though the contents thereof would tend to incriminate, personally, the holder of the books. But this does not mean that the person producing the books and records, held in a representative capacity, can be compelled to give oral testimony concerning them if his answers may incriminate him. O'Hare, in support of his claim of privilege, urges the added circumstance in his case of the charge in the complaint that he misappropriated the books and records and implies that it relieves him of any compulsion to produce any of the books and records it is alleged he misappropriated. His mere possession of the books may be incriminatory, a fact which distinguishes his case from the above-cited cases. However, their production may be enforced if O'Hare's possession of them, other than in a personal or individual capacity, can be established through the testimony of others. Nevertheless, and sufficient for the purposes of this appeal, it is clear that he cannot be compelled to answer any questions concerning his possession of them, so long as such possession may be incriminating or may lead to incrimination. The basis for the distinction is that the constitutional privilege is a testimonial and personal one. (*People* v. *Defore*, 242 N. Y., 13, 27; *United States* v. *White, supra.*) But this privilege will not protect him against their compulsory production if they are not his personal records.

The claim of waiver of privilege is untenable. Primarily, courts must " ' indulge every reasonable presumption against waiver ' of fundamental constitutional rights." (*Johnson* v. *Zerbst,* 304 U. S. 458, 464.) " Waiver of constitutional rights, however, is not lightly to be inferred." (*Smith* v. *United States,* 337 U. S. 137, 150.) To make the privilege effective, courts may neither give it a narrow construction nor whittle it away by a broad construction of its waiver. The dangers inherent in a broad construction of waiver are that it places the witness in the anomalous position of either claiming his privilege indiscriminately and risking the consequences, or being considered to have waived his constitutional rights by answering innocuous questions. The result will be to curtail efforts to obtain evidence.

There is no waiver found here. It is evident that Special Term found none since it eliminated 8 of the 11 questions to which O'Hare asserted his privilege. An examination of these

questions demonstrates that if there were a waiver it would have applied equally to the 8 questions eliminated.

The plaintiff did not appeal from the ruling of Special Term sustaining O'Hare's privilege as to these 8 questions. A comparison of these 8 questions with the 3 in issue demonstrates that they all embrace the same subject matter, viz., the alleged misappropriation of the property of Local 333. There is little or no material difference that distinguishes them. In such a circumstance, it has been held that the examiner cannot " pick out one, and say, if that be put, the answer will not incriminate him." (*Foot* v. *Buchanan*, 113 F. 156, 161; *United States* v. *Rosen*, 174 F. 2d 187; *Poretto* v. *United States*, 196 F. 2d 392, 396.)

To sustain the privilege in a pretrial examination does not result in as much harm to the adversary as it does in a criminal case. The defendant may still be subpœnaed at the trial, while the accused in a criminal case may not be put on the stand, nor may inferences be drawn from his failure to testify in his own behalf. In a civil case, however, it has been held that the trier of facts may draw an inference from the refusal of a witness to testify under a claim of privilege. (*Ikeda* v. *Curtis*, 43 Wash. 2d 449.) Hence, while the " claim of privilege may not be used against him in a subsequent criminal prosecution, and inference that his testimony would have been unfavorable to him is available to the opponent in the civil cause." (8 Wigmore on Evidence [3d ed.], § 2272, p. 419, p. 163, 1955 Pocket Supp.)

The order, insofar as it is appealed from, should be reversed and the motion to punish for contempt and to strike the answer of defendant O'Hare, individually and as treasurer of Federal Labor Union No. 24948, United Marine Division, Local 333, should be denied in its entirety.

BREITEL, J. P., BOTEIN, RABIN and BERGAN, JJ., concur.

Order, so far as appealed from, unanimously reversed, with $20 costs and disbursements to the appellants, and the motion to punish for contempt and to strike the answer of defendant O'Hare, individually and as treasurer of Federal Labor Union No. 24948, United Marine Division, Local 333, denied in its entirety. Settle order on notice.