McCAIN, Judge.
Appellant-defendant appeals entry of summary final judgment. We reverse.
Appellee, as administratrix of her husband’s estate, sued appellant in fraud and deceit alleging the obtaining of monies from deceased by willful misrepresentations, to which appellant filed a general denial.
Appellee’s motion for summary judgment was supported by a copy of the deceased’s affidavit prepared while he was alive and filed in a different suit. Appellant’s deposition was taken but he refused to testify on grounds that it might tend to be incriminating.
The summary judgment reads in part as follows:
“This cause was presented on Plaintiff’s Motion for Summary Judgment. The Court has considered the record, arguments of counsel and their supporting briefs. Defendant filed nothing in opposition to Plaintiff’s Motion and exhibits. When Defendant’s deposition was taken, he refused to answer any questions on the ground that to do so might tend to incriminate him. His Answer filed, .herein is a general denial of all of the allegations of Plaintiff’s Complaint. This answer cannot stand as a bar, if Defendant refuses to answer questions relating to Plaintiff’s claim, and offers no other evidence.”
This judgment was entered upon one or both of the following premises:
1. A determination that appellant’s refusal to testify was improper, resulting in an admission of appellee’s claim; and/or
2. A determination that appellant’s refusal to testify in light of only a general denial amounted to no defense and, considering the affidavit of the deceased in whole or in part, the appellee’s claim was proved leaving no genuine issue of material fact.
In treating this first premise, we recognize that the propriety of entering summary judgment against a defendant who refuses to testify upon deposition in a civil action on grounds of self-incrimination has not been expressly ruled upon in Florida.
One theory, however, is that when one becomes an actor or profiteer of the judicial process and seeks to obtain some remedy or independent relief beneficial to him in a civil case, invocation of the privilege against self-incrimination may result in the court’s door being closed to his claim for relief or remedy.[1]
Conversely, appellant, as an involuntary defendant, simply denied the claims of fraud, deceit and misrepresentations. He sought no independent relief and cannot be construed as an actor or profiteer of the judicial machinery.
Appellee neither certified to the court her unanswered questions on deposition nor attempted to strike appellant’s general denial or to otherwise require him to respond.
Arguendo, if appellant was the only person who had knowledge of the fraud and thereby should have testified as to this knowledge,[2] the record discloses that in re- *435 sponse to appellant’s interrogatory to name all persons who were present during and had knowledge of the fraudulent representations, appellee’s answer was, “unknown.” This cannot be construed as establishing appellant to he the one having sole and exclusive knowledge necessary for proof of appellee’s claim.
Additionally, the appellant, at the time of deposition, was under criminal charges and subject to prosecution for an alleged offense arising from the same transaction.
Considering these events, appellant should not he penalized by entry of a summary judgment for invoking his constitutional privilege against self-incrimination.[3]
Going to the second premise upon which the trial court could have acted, we' are confronted with the use of a deceased’s affidavit prepared for and filed in a separate action to which the appellant was not a party. Aside from the issue of the questionable use of such an affidavit,[4] it falls short of establishing the claim of fraud.
The essential elements of fraud are: (1) a false statement of fact: (2) known by the defendant to be fraudulent at the tmie it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage to the plaintiff.[5]
In response to appellant’s motion for more definite statement to set forth details of the misrepresentations, the appellee answered :
“2. Details of the fraudulent representations alleged in paragraphs 4 and 6 are as follows:
“(1) Defendant received from Plaintiff’s decedent check No. 6498 in the amount of $11,800.00 and deposited it in his bank account.
“(2) Defendant received, by virtue of said deposit, a credit of $11,800.00 in his account.
“(3) Defendant did not tell Plaintiff’s decedent he had received $11,800.00 credit in his account for said check, but represented unto Plaintiff’s decedent that he was lawfully and properly entitled to receive a new payment of $11,800.00 by virtue of the fact that payment had been stopped on check No. 6498, that it would never be paid and would be voided.
“(4) Soliciting and receiving full payment twice for the same consideration.
“3. Defendant’s untrue representation was that he was lawfully entitled to receive $11,800.00 the second time.”
Initially, a cursory review reveals the affidavit to be fraught with hearsay qualities. Many of the statements are defended under the sole proposition they were in fact made to the affiant. Even so, this will not permit them to be asserted for the truth of their contents, without which competency the appellee’s claim is short of proof.[6]
Again, arguendo, if we attempt to digest the entire contents of the affidavit this also fails to establish the propriety of a *436 summary judgment. The affidavit establishes: Appellant bought three automobiles from deceased, giving payment by three checks totaling $10,000.00; practically simultaneously the deceased bought eight automobiles from appellant giving one check in payment totaling $11,800.00; deceased learned appellant’s bank account was insufficient to cover his checks and that they were being returned, whereupon, deceased issued stop payment on his check on or about July 30, 1965. The affidavit then goes on to read in pertinent part:
“10. That throughout the day of July 30, 1965 your Affiant made strenuous efforts to contact M. C. Abbate and was informed that he was out of town and could not be located.
“11. Thereafter, on or about August 4 or 5, 1965, your Affiant met with M. C. Abbate and delivered to him the three checks identified as Tropical Checks Nos. 1(a), 1(b), and 2, delivered to Abbate an additional check in the sum of $1800.-00 drawn on the account of Nolan Motor Co. in the Atlantic National Bank of West Palm Beach and payable to Tropical Motors, copy of which is attached hereto marked ‘Affidavit Exhibit No. 3’, in full settlement of all accounts between Tropical Motors and your Affi-ant, with the understanding that- the check, identified as Plaintiff’s Exhibit No. 1, had been stopped, would never be paid, and would be voided.
“12. That on Monday, August 2,1965, this Affiant had been informed by the Atlantic National Bank of West Palm Beach that the First National Bank in Lake Worth had confirmed to said Atlantic National Bank of West Palm Beach that it was holding funds sufficient to cover the check identified as Plaintiff’s Exhibit No. 1.
“13. That by virtue of the above and foregoing, this Affiant has otherwise paid in full for the automobiles identified in paragraph 5 of this Affidavit, and has, therefore, received no benefit, funds, or other consideration covering the check identified as Plaintiff’s Exhibit No. 1.” (Emphasis added.)
Therefore, on August 2, deceased knew his funds were being held by appellant’s bank to cover his draft. This infers the check had been paid or credited by the bank to appellant. Nevertheless on August 4 or 5 deceased returned appellant’s checks for $10,000.00 with deceased’s additional draft for $1,800.00, in settlement of his account of $11,800.00 with the “understanding” that his check for $11,800.00 had been stopped and would be voided. The record is otherwise silent as to what subsequently happened except that the $1,800.00 draft was deposited and cleared.
For aught appears from this record, deceased was or should have been on notice that his first check had been paid. His knowledge was practically as great as that of the appellant. Why appropriate measures were not taken by him to correct this situation with both the appellant and the bank on August 4 or 5 are not disclosed. Under these circumstances the bare assertion of an “understanding” with appellant is insufficient to establish deceased’s reliance on the correctness of any misrepresentation, and therefore is insufficient to establish fraud.
Genuine issues of material fact existed rendering entry of the summary judgment improper.[7]
Accordingly we reverse and remand with instructions for entry of an order consistent herewith.
Reversed and remanded.
REED, J., concurs.
CROSS, C. J., concurs in conclusion.

. Stockham v. Stockham, Fla.1964, 168 So.2d 320, 4 A.L.R.3rd 539; Nuckols v. Nuckols, Fla.App.1966, 189 So.2d 832; but see Simkins v. Simkins, Fla.App.1969, 219 So.2d 724, reversing an order requiring husband to testify on discovery as to acts of adultery even though he filed suit for divorce.

. McKelvey v. Freeport Housing Authority, 1961, 29 Misc.2d 140, 220 N.Y.S.2d 628.

. A similar conclusion can be inferred from results in other jurisdictions. Abramo-witz v. Voletsky, 1965, 47 Misc.2d 626, 262 N.Y.S.2d 991; National Discount Corporation v. Holzbaugh, E.D.Mich. 1952, 13 F.R.D. 236; de Antonio v. Solomon, D.Mass.1966, 41 F.R.D. 447.

. F.R.C.P. 1.510(e), 31 F.S.A., 13 Fla. Jur., Evidence, § 232 ; 29 Am.Jur.2d, Evidence, § 621; Habig v. Bastian, 1935, 117 Fla. 864, 158 So. 508.

. Tonkovich v. South Florida Citrus Industries, Inc., Fla.App.1966, 185 So.2d 710 (cause remanded Fla.1967, 196 So.2d 438 and Fla.App.1967, 202 So.2d 579).

. Ginn v. Weiss, Fla.App.1966, 183 So.2d 6; Food Fair Stores, Inc. v. Trusell, Fla.1961, 131 So.2d 730; Halavin v. Tamiami Trail Tours, Inc., Fla.App.1960, 124 So.2d 746; Tarkoff v. Schmunk, Fla.App.1959, 117 So.2d 442.

. Harvey Building, Inc. v. Haley, Fla.1965, 175 So.2d 780; Holl v. Talcott, Fla.1966, 191 So.2d 40; Producers Fertilizer Company v. Holder, Fla.App.1968, 208 So.2d 492.