FIRST FEDERAL SAVINGS & LOAN
ASSOCIATION OF SALT LAKE
CITY, Plaintiff and Respondent,

v.

Gail SCHAMANEK, Defendant
and Appellant.

No. 17910.

Supreme Court of Utah.

May 1, 1984.

Gary A. Frank, Murray, for defendant and appellant.

John W. Lowe, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

In this case, the trial court struck the defendant's answer for failure to respond to requests for discovery and entered a default judgment against the defendant for $6,122.79 plus interest and costs. The defendant's refusal to respond to deposition questions, requests for admissions and a demand for production of certain documents, including income tax returns, was based on her assertion of the privilege against self-incrimination. We affirm the trial court.

## I.

On August 8, 1980, Gail Schamanek entered First Federal and presented a cashier's check for $6,122.79. Pursuant to her instructions, $6,000 was credited to her account, and $122.79 was paid to her in cash. At the close of that day, the First Federal teller was unable to locate the cashier's check and solicited Schamanek's help. Upon being contacted by the bank, Schamanek refused to furnish any information that might be used in trying to trace the check, such as the identity of the bank that issued the check or the person who had purchased it. This suit was filed on the basis of plaintiff's information and belief that Schamanek, after cashing the check, retrieved the check from the teller's cage while the teller's attention was diverted. The amended complaint alleged:

> [A]fter the check was delivered by defendant [Schamanek] to the teller defendant wrongfully and surreptitiously and unknown to the teller retrieved said check [previously credited to defendant's account], cashed it, and received the proceeds therefrom.

Schamanek's answer denied the allegations. In response to Schamanek's interrogatories, First Federal amplified the factual basis of its claim for relief:

> The check was given to plaintiff's teller. While the teller was obtaining theater tickets which defendant wanted to buy, she left the check and other papers on the counter, to which defendant had access. The teller, immediately after serving the next customer, discovered the check was missing. The teller and other of plaintiff's personnel asked defendant about the check. She gave vague responses and after repeated inquiries refused to give plaintiff information in relation thereto, to enable plaintiff to identify who drew the check, on what bank, and who cashed the check. She is still refusing, ergo she had the opportunity to take the check back and did so.

First Federal submitted requests for admissions pursuant to Rule 36 of the Utah Rules of Civil Procedure and for production of documents pursuant to Rule 34, and also sought to depose Schamanek. Schamanek refused to respond to the requests for admission or production of documents. She also refused to answer deposition questions, on the ground that the answers might tend to incriminate her. However, a transcript of the deposition is not a part of the appellate record, and there is nothing in the record to indicate what questions she declined to answer.

First Federal obtained an order to compel defendant to submit to discovery. After Schamanek's continued refusal to do so, the trial court struck her answer pursuant to Utah R.Civ.P. 37 on the grounds that Schamanek failed to respond to questions at her deposition, to respond to requests for admissions, and to produce documents. Accordingly, the trial court entered a default judgment.

## II.

█ It has long been settled that the privilege against self-incrimination may be invoked in a civil proceeding under both the Fifth Amendment of the United States Constitution and Article I, § 12 of the Utah Constitution. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Affleck v. Third Judicial District Court*, Utah, 655 P.2d 665 (1982); *State v. Byington*, 114 Utah 388, 200 P.2d 723 (1948).

█ The privilege may be asserted in civil discovery proceedings to refuse to answer Rule 33 interrogatories, *e.g., Geldback Transport Inc. v. Delay*, Mo., 443 S.W.2d 120 (1969); questions posed in depositions, *e.g., Affleck v. Third District Court, supra;* and Rule 34 demands for production of documents, *e.g., Giles v. Doggett*, Okla., 500 P.2d 574 (1972). Because admissions made pursuant to Rule 36 may be used only in the then-pending proceeding,[1] there is a division of authority as to

1. Utah R.Civ.P. 36(b) and Fed.R.Civ.P. 36(b), which are identical, read in relevant part:

whether the privilege may properly be interposed against requests for admissions. Some courts refuse to recognize the privilege on the ground that Rule 36(b) prevents the use of admissions in criminal prosecutions.[2]

In our view, the interests that the privilege against self-incrimination were designed to safeguard cannot be adequately protected by compelling a person to trade that right for the attenuated protection of Rule 36(b). Full and complete protection of that right can be afforded only if a party may decline to answer by interposing an objection to requests for admissions.[3] As one commentator has stated:

> Three cases state or imply that, since an answer to a request [for admission] cannot be used as evidence in a criminal case, the answer cannot be incriminating, and therefore a request cannot be objectionable on self-incrimination grounds.[4] This conclusion is erroneous. The privilege may be claimed unless the witness is immunized against future prosecution based on knowledge or information obtained as a result of his testimony.[5] Rule 36(b) [of the Federal Rules of Civil Procedure] does not confer this kind of immunity and consequently would not preclude a claim of privilege if the litigant's answer might cause criminal charges to be brought against him.

Finman, "The Request for Admissions in Federal Civil Procedure," 71 Yale L.J. 382, 384–85 (1962) (footnotes in original).

The privilege may be invoked if an answer *might* incriminate and there is some possibility that a criminal action

might be filed. *See Rogers v. United States*, 340 U.S. 367, 374–75, 71 S.Ct. 438, 442–43, 95 L.Ed. 344 (1951); *United States v. Miranti*, 253 F.2d 135, 139 (2d Cir.1958); *Camelot Group, Ltd. v. W.A. Krueger Co.*, 486 F.Supp. 1221, 1228 (S.D.N.Y.1980). Although criminal charges need not be pending, *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892), the possibility of a criminal prosecution must be a "real danger," not a "mere imaginary possibility." *Rogers v. United States*, 340 U.S. at 374–75, 71 S.Ct. at 442–43. *Accord Affleck v. Third Judicial District Court*, Utah, 655 P.2d 665 (1982). In this case, the possibility of a criminal prosecution against Schamanek exists, and that possibility is not disputed by First Federal.

Whether the trial judge ruled properly in this case turns on (1) whether Schamanek properly invoked the privilege against the questions asked and the documents demanded and (2) whether the trial court's striking of Schamanek's pleadings was a permissible sanction for failure to respond.

### III.

Except in unusual circumstances, the privilege against self-incrimination must be invoked in response to each specific question propounded or document or other physical evidence sought, or the privilege is waived. It may not generally be asserted as a blanket response to all discovery. *Affleck v. Third Judicial District Court, supra.* See *United States v. Moore*, 682 F.2d 853, 856 (9th Cir.1982); *Eastham v. Arndt*, 28 Wash.App. 524, 532,

---

Any admission made by a party under this Rule is for the purpose of the pending action only and is not an admission by him for any other purpose *nor may it be used against him in any other proceeding.* [Emphasis added.]

2. *United States v. La Fontaine*, 12 F.R.D. 518 (D.R.I.1952); *Parker v. Hennepin County Dist. Ct.*, Minn., 285 N.W.2d 81 (1979); *Phelps Dodge Corp. v. Superior Ct.*, 7 Ariz.App. 277, 438 P.2d 424 (1968).

3. *Gordon v. Federal Deposit Ins. Corp.*, 427 F.2d 578 (D.C.Cir.1970); *LeBlanc v. Spector*, 378 F.Supp. 310 (D.Conn.1974); *Federal Deposit Ins. Corp. v. Logsdon*, 18 F.R.D. 57 (W.D.Ky.1955).

*See generally* Finman, "The Request for Admissions in Federal Civil Procedure," 71 Yale L.J. 371, 382–86 (1962).

4. Citing *Woods v. Robb*, 171 F.2d 539, 541 (5th Cir.1948); *United States v. La Fontaine, supra* note 2; *United States v. Lewis*, 10 F.R.D. 56, 57 (D.N.J.1950).

5. Citing *Ullmann v. United States*, 350 U.S. 422, 436–37, 76 S.Ct. 497, 505–06, 100 L.Ed. 511 (1956) (dictum); *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

624 P.2d 1159, 1165 (1981). *But see United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir.1980), which sustains a blanket invocation of the privilege because the party could "legitimately refuse to answer essentially all relevant questions," *quoting United States v. Gomez-Rojas,* 507 F.2d 1213, 1220 (5th Cir.1975). As to each question asked and each document sought, the court must decide if a refusal to respond is justified. *Rogers v. United States, supra,* 340 U.S. at 374, 71 S.Ct. at 442.

▮▮▮▮ In ruling on the propriety of invoking the privilege, whether under the State or Federal Constitution, a court should construe the scope of the privilege liberally and not in a hostile or niggardly spirit. *Ullmann v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). The standard to be applied in such cases was stated in *United States v. Hoffman,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951):

> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embrace those which would furnish a *link in the chain of evidence* needed to prosecute the claimant for a federal crime.... *To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the* question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." [Citations omitted; emphasis added.]

*See also Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In applying this test, the judge should not deny the privilege unless it is " 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman, supra,* 341 U.S. at 488, 71 S.Ct. at 819, *quoting Temple v. Commonwealth,* 75 Va. 892, 898 (1881).

First Federal argues that several of the requests for admissions, requests to produce, and questions put to Schamanek at her deposition were not incriminating.[6] The critical requests for admissions essentially sought to establish that Schamanek gave First Federal a cashier's check which was credited to her account, that she took the check back and cashed it again and that she refused to cooperate in supplying information concerning the check.[7] First Federal's request for documents included: (1) income tax returns; (2) documents relating

---

**6.** First Federal relies on language from *State v. Byington,* 114 Utah 388, 391, 200 P.2d 723, 724 (1948), in which this Court stated that the privilege was applicable to "any fact which is a 'necessary or essential part of a crime.' " To the extent that this language is narrower than the standard stated in *Hoffman, Byington* is overruled.

**7.** The requests for admissions read in full:
1. On or about August 8, 1980 defendant gave to a teller of plaintiff a check in the amount of $6,122.79.
2. Said check was a cashier's check.
3. Defendant received credit for a deposit of $6,000 therefor.
4. The balance of $122.79 was paid to defendant in cash.
5. On August 13, 1980 plaintiff requested defendant to stop payment on the check.
6. On or about August 13, 1980 plaintiff requested that defendant give plaintiff information sufficient to permit plaintiff to ascertain who did cash the check.
7. Defendant refused to furnish any information concerning the check.
8. Defendant refused to stop payment.
9. Defendant refused to furnish information concerning the check.
10. Defendant knows on what bank the check was drawn.
11. After delivering the check to plaintiff's teller defendant regained possession of said check.
12. Defendant knows where the check was cashed.
13. Defendant knows by whom the check was cashed.
14. Defendant cashed the check.
15. Defendant received the proceeds therefrom.

to real estate sales; and (3) documents relating to loans obtained.

 Answers to the requests could have linked Schamanek with the check, shown that she had received value for it and that she had retrieved the check, possibly for the purpose of cashing it again. Then had Schamanek answered the requests for admissions, the answers could have furnished "a link in the chain of evidence" which could be used to prosecute Schamanek for theft. *United States v. Hoffman*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951).

 Schamanek was also entitled to invoke the privilege against self-incrimination as to the demand for documents by making the necessary threshold showing that production of the documents might be incriminatory. Since the landmark case of *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), it has been well-settled that the privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers, as well as compelled oral testimony. *See also Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *People v. Myers*, 35 Ill.2d 311, 333, 220 N.E.2d 297, 310 (1966); 8 J. Wigmore, *Evidence* § 2264 at 378, n. 1 (McNaughton rev. 1961).

One accepted rationale for extending the privilege to the production of a person's documents is that production pursuant to compulsory court process involves the testimonial component of a tacit confession of the existence of the papers demanded and their possession and control by the person required to make the production.[8] *Fisher v. United States*, 425 U.S. 391, 412 n. 12, 96 S.Ct. 1569, 1582 n. 12, 48 L.Ed.2d 39 (1976); *Rey v. Means*, Okla., 575 P.2d 116 (1978); *People v. Defore*, 242 N.Y. 13, 27, 150 N.E. 585, 590 (1926) (Cardozo, J.); 8 J. Wigmore, *supra*, § 2264 at 380.

The United States Supreme Court has addressed the boundaries of this principle in a series of cases. *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). *See also United States v. Doe*, — U.S. —, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). In *Fisher, supra*, the Court held that for the privilege to apply, the act of producing the documents must be "testimonial" in nature, stating:

> It is ... clear that the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating. [Emphasis in original.]

425 U.S. at 408, 96 S.Ct. at 1579. *See also United States v. Braswell*, 436 F.Supp. 669 (E.D.N.C.1977); *B.M. v. State*, 113 Wis.2d 183, 335 N.W.2d 420 (1983). In *Fisher*, the Court declined to fashion a general rule as to when the compelled production of documents becomes "testimonial." The Court stated that resolution of that question "may depend on the facts and circumstances of particular cases or classes thereof." *Fisher, supra*, 425 U.S. at 410, 96 S.Ct. at 1581.

Lower federal courts have characterized the holding in *Fisher* as defining a three-part test. Before a person may assert the privilege argument to a demand to produce documents, or a subpoena to produce, a court must find that there is (1) compulsion (2) of a testimonial communication, and that (3) the communication is incriminating under the *Hoffman* standard. *United States v. Authement*, 607 F.2d 1129 (5th Cir.1979); *Grand Jury Empanelled*, 597 F.2d 851 (3rd Cir.1979); *Grand Jury Empanelled March 19, 1980*, 541 F.Supp. 1 (D.N.J.1981), *aff'd*, 680 F.2d 327 (3rd Cir.

---

8. In a civil suit, documents produced by a party pursuant to Rule 34, Utah R.Civ.P., are produced under compulsion, although the nature of the compulsion is different from that used to enforce a subpoena in a criminal case.

1982). *See United States v. Porter*, 557 F.Supp. 703, 708 (N.D.Ill.1982).

■ A demand for production of documents is compulsory because sanctions may be imposed for failure to comply. Furthermore, if Schamanek had complied with the demand to produce documents, except the income tax returns, her compliance would have been "testimonial." Schamanek would have tacitly authenticated the documents and her possession of them. *Compare Hansen v. Owens*, Utah, 619 P.2d 315 (1980), which expands the privilege by holding that it is not limited to compulsion of testimony.[9] Therefore, if the defendant made a proper showing under the *Hoffman* standard as to the incriminatory nature of the documents, the privilege against self-incrimination would have protected her from producing them. However, since the trial court struck Schamanek's pleading partially because of her failure to produce those documents and since the abbreviated record brought on appeal contains no evidence suggesting that they were incriminatory, we must presume that the trial court's order was supported by the evidence, i.e., that the documents were not incriminatory under *Hoffman*.

■ Income tax returns do not fall within the above rule because of their special nature as semi-public records which are required to be kept by law. In *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), the leading case on the point, the Supreme Court stated:

> [T]he privilege [against self-incrimination] which exists as to private papers cannot be maintained in relation to "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established."

*Id.* at 33, 68 S.Ct. at 1392, *quoting Davis v. United States*, 328 U.S. 582, 589–90, 66 S.Ct. 1256, 1259–60, 90 L.Ed. 1453 (1946).

*See* 8 J. Wigmore, *Evidence* § 2259c (McNaughton rev. 1961).

■ The *Shapiro* rule could be used to circumvent the privilege against self-incrimination if the government could require reports from classes of persons thought to be engaged in criminal activity on the ground that such reports are public documents. The law is clear that the government may not require those who are suspect of criminal activities to disclose their criminal activities in government reports. *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971); *Marchetti v. United States*, 390 U.S. 39, 47, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Albertson v. SACB*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). *Grand Jury Proceedings*, 601 F.2d 162, 168 (5th Cir.1979).

■ Although tax returns must be filed with the government, 26 U.S.C. §§ 6001, 1011, 6012 (1982 ed.), they do not purport to require compulsory disclosure of incriminatory material. They are directed to the general public and utilized in the administration of the revenue laws that apply to all. If filling out a return calls for disclosure of incriminating information, the privilege may be invoked on the return. *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

> "[T]he questions in [an] income tax return [are] neutral on their face and directed at the public at large...." The requirement that such returns be completed and filed simply does not involve the compulsion to incriminate considered in *Mackey* [*v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)].

*Garner v. United States*, 424 U.S. 648, 660–61, 96 S.Ct. 1178, 1185–86, 47 L.Ed.2d 370 (1976) *quoting Albertson v. SACB*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). In *Garner v. United States*, *supra*, the United States Supreme Court held that if a defendant makes incrimina-

---

**9.** The author of this opinion recognizes the present authority of *Hansen v. Owens*, Utah, 619 P.2d 315 (1980), but continues to adhere to his dissent.

ting disclosures on his tax returns rather than asserting the privilege on the return, he cannot raise the privilege when the returns are adduced as evidence at trial. The Court stated: "[A]n individual under compulsion to make disclosures as a witness who reveal[s] information instead of claiming the privilege los[es] the benefit of the privilege." 424 U.S. at 653, 96 S.Ct. at 1182, *citing United States v. Kordel,* 397 U.S. 1, 7–10, 90 S.Ct. 763, 766–769 (1970).

> In short, tax returns are
>
> at most, semi-private documents which the law requires to be filed. The authentication resulting from defendant's compelled production of the documents adds little, if anything, to the quantum of knowledge possessed by the court. *See Fisher v. United States....* [Therefore] ... the testimonial aspect involved in producing defendant's tax returns would not be sufficient to rise to the level of fifth amendment protection.

*Lowder v. All Star Mills, Inc.,* 301 N.C. 561, 590–91, 273 S.E.2d 247, 264 (1981). *Accord Minnesota State Bar Association v. Divorce Assistance Association, Inc.,* 311 Minn. 276, 248 N.W.2d 733 (1976); *Grand Jury Empanelled March 19, 1980,* 541 F.Supp. 1 (D.N.J.1981); *United States v. Braswell,* 436 F.Supp. 669 (E.D.N.C. 1977). *Contra B.M. v. State,* 113 Wis.2d 183, 335 N.W.2d 420 (1983); *State ex rel. Caloia v. Weinstein,* Mo.App., 525 S.W.2d 779 (1975); *Bon Voyage Travel Agency,* 449 F.Supp. 250 (N.D.Ill.1978).

 Schamanek also asserted the privilege against self-incrimination in refusing to answer questions put to her on deposition. However, the deposition transcript is not in the record on appeal, and we are not able, therefore, to determine the validity of the trial court's order directing the defendant to answer the deposition questions. An appellant has the obligation to provide an adequate record on appeal for reviewing a trial judge's ruling. In the absence of a record, we must, and in this case do, presume that the trial court's rulings are correct. *E.g., Bevan v. J.H. Construction Co. Inc.,* Utah, 669 P.2d 442, 443

(1983); *Goodman v. Wilkinson,* Utah, 629 P.2d 447 (1981); *Garrand v. Garrand,* Utah, 615 P.2d 422 (1980).

## IV.

 The general rule is that a party in a civil case who refuses to respond to an order compelling discovery is subject to sanctions pursuant to Utah R.Civ.P. 37(b)(2)(C). *See also* 4A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 37.03[2.--5] (1983). The sanctions are intended to deter misconduct in connection with discovery, *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), and require a showing of "willfulness, bad faith, or fault" on the part of the non-complying party. *Id.; Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). The choice of an appropriate discovery sanction is primarily the responsibility of the trial judge and will not be reversed absent an abuse of discretion. *National Hockey League, supra,* 427 U.S. at 642, 96 S.Ct. at 2780; *Hindmon v. National-Ben Franklin Life Insurance Corp.,* 677 F.2d 617 (7th Cir.1982).

 An exception to the general rule exists when a privilege is validly asserted. A court may not ordinarily strike a party's pleadings if the refusal to respond to a discovery order is based on a valid claim of privilege. *See Savola v. Webster,* 644 F.2d 743, 744 (8th Cir.1981); *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084 (5th Cir.1979); *Campbell v. Gerrans,* 592 F.2d 1054 (9th Cir.1979); *Moore's Federal Practice, supra,* ¶ 37.03[2.–5]. Striking the pleadings is permissible, however, where there is an invalid refusal to obey a discovery order. *See Hindmon v. National-Ben Franklin Life Insurance Corp., supra; Davis v. Fendler,* 650 F.2d 1154 (9th Cir.1981).

 To sustain an assertion of the privilege against self-incrimination, a party must show that the responses sought to be compelled might be incriminating. This requires more than merely declaring that an

answer will incriminate—it requires, "at a minimum, a good faith effort to provide the trial judge with sufficient information from which he can make an intelligent evaluation of the claim." *Davis v. Fendler, supra,* 650 F.2d at 1160. "The claimant is not the final arbiter of the validity of his assertion." *Id.*

In the instant case, the trial court ordered Schamanek to appear and answer deposition questions and to produce the requested documents. On the record before us, she made no showing that the documents would be incriminatory. Instead, she violated the order by failing to produce the documents and by failing to appear at a deposition. There was, therefore, a sufficient basis for imposition of a sanction, and it was within the trial court's prerogative to strike the pleadings as a sanction for a willful failure to respond.

The concurring opinion of Chief Justice Hall suggests that we should affirm the trial court in this case on the basis of *Gerard v. Young,* 20 Utah 2d 30, 432 P.2d 343 (1967). In *Gerard,* a lessor sued a lessee of a cafe. The sole issue was whether the lessee had conducted gambling on the premises in violation of the lease. The lessor moved for summary judgment and, in support of the motion, filed the affidavits of three persons who saw others receive gambling payoffs at the cafe. The lessee first controverted these affidavits by his own affidavits. At his deposition, the lessee invoked the Fifth Amendment and refused to answer any questions concerning gambling. The trial court ruled for the lessor, and this Court affirmed.

The rationale of *Gerard v. Young* is unclear. A plurality of the Court affirmed, apparently on the ground that the defendant had invoked the Fifth Amendment merely as a delay tactic. Justice Ellett, in a concurring opinion, reasoned that because the lessor had submitted uncontroverted evidence in support of the motion that gambling was conducted on the leased premises, and because the defendant's invoking of the privilege against self-incrimination gave rise to an adverse inference, the summary judgment was properly granted.

The proposition is well established that in civil cases a party's failure to respond to valid inquiries on the basis of the privilege against self-incrimination can give rise to an adverse inference against that party at trial. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977) (explaining *Baxter*); *Bradley v. O'Hare,* 2 A.D.2d 436, 156 N.Y. S.2d 533 (1956); *Ikeda v. Curtis,* 43 Wash.2d 449, 261 P.2d 684 (1953); *Molloy v. Molloy,* 46 Wis.2d 682, 176 N.W.2d 292 (1970); 8 J. Wigmore, *Evidence* § 2272(e) n. 14 (McNaughton rev. 1961) (citing cases).

Ordinarily, however, the invoking of the privilege by a civil defendant does not by itself justify striking a defendant's pleadings or granting a summary judgment against a defendant. *E.g., de Antonio v. Solomon,* 41 F.R.D. 447 (D.Mass.1966); *Abbate v. Nolan,* Fla.App., 228 So.2d 433 (1969); *Steinbrecher v. Wapnick,* 24 N.Y.2d 354, 300 N.Y.S.2d 555, 248 N.E.2d 419 (1969); *Abrahamowitz v. Voletsky,* 47 Misc.2d 626, 262 N.Y.S.2d 991 (Sup.Ct. 1965); *McKelvey v. Freeport Housing Authority,* 29 Misc.2d 140, 220 N.Y.S.2d 628 (Sup.Ct.1961). *See also* cases discussed at 8 J. Wigmore *Evidence,* supra, § 2272(e) n. 14; Annot., "Dismissing Action or Striking Testimony Where Party to Civil Action Asserts Privilege Against Self-Incrimination As To Pertinent Question," 4 A.L.R.3d 545, § 3 (1965). *Cf. Grognet v. Fox Valley Trucking Service,* 45 Wis.2d 235, 238, 172 N.W.2d 812, 815 (dictum).

Before allowing an adverse inference to be drawn against the defendant at trial, the plaintiff would have to introduce evidence that connects the defendant to the plaintiff's claim for relief. That evidence must be independent of the inference arising from the defendant's invoking the privilege. The adverse inference that arises from invoking the privilege may then be considered along with any other

evidence by the trier of fact when reaching a decision; but the inference is not enough, by itself, to sustain a judgment against the defendant without some other evidence. "The fact that a defendant in a civil suit assumes a substantial risk when he chooses to assert his [Fifth Amendment] privilege does not, however, mean that the plaintiff is relieved of his obligation to prove a case before he becomes entitled to judgment." *Steinbrecher v. Wapnick*, 24 N.Y. at 365, 300 N.Y.S.2d at 566, 248 N.E.2d at 427.

Accordingly, *Gerard v. Young*, 20 Utah 2d 30, 432 P.2d 343 (1967), stands for the narrow proposition that where, on a motion for summary judgment, a plaintiff establishes through independent, uncontroverted evidence that he is entitled to summary judgment, a defendant cannot avoid a summary judgment by claiming the privilege against self-incrimination.

In the instant case, the striking of the pleadings resulted from the defendant's refusal to comply with a discovery order which we are obligated to assume was valid. The sanction imposed in this case was for violation of that order. Unlike *Gerard*, no motion for summary judgment was made, but the order striking defendant's pleadings and entering a default judgment was valid.

Affirmed. Costs to respondent.

OAKS, HOWE and DURHAM, JJ., concur.

HALL, Chief Justice (concurring specially):

I concur in affirming the judgment of the trial court, but do so for the reason that the issue presented by this appeal has been previously determined by this Court.

In *Gerard v. Young*,[1] the plaintiff sought to terminate a cafe lease where allegedly gambling was being conducted in violation of a condition of the lease. The defendant denied the allegation in his answer. Thereafter, in a deposition, he refused to admit the alleged gambling on the ground that it might incriminate him. This prompted the trial court to conclude that no factual issue remained and to grant summary judgment accordingly. On appeal, this Court affirmed, holding that a party in a civil action may not escape civil liability by claiming the privilege against incrimination, for if the privilege is claimed it invokes the inference that if the evidence had been produced it would have been unfavorable.

As was further observed in Justice Ellett's concurring opinion in *Gerard v. Young:*

There is no quarrel with the claim that the defendant cannot be made to incriminate himself, but in a civil case when he has a duty to state a fact, he does not state that fact by claiming privilege. In the case of *Albert v. Chambers*, 355 Mich. 111, 55 N.W.2d 752, the defendant did not want to answer under oath certain allegations of the complaint given under oath lest the answer incriminate her. The Michigan Supreme Court at page 755 of the North Western Reporter said:

That portion of the rule which deals with answers at law and in equity requires the defendants to answer the allegations of the declaration. However, those allegations may be either admitted or denied. If a material allegation in the declaration is not answered, the rule provides that it shall be taken as admitted.

To allow this defendant to remain in court under these circumstances would not be different from refusing to direct a verdict in a civil case where the plaintiff testified to facts showing the defendant had stolen hogs, and the defendant had refused to testify on the grounds that his answers would tend to incriminate him. Is there any reason to allow that case to go to the jury?

In protecting the constitutional rights of the defendant not to incriminate himself, we must not lose sight of the fact

---

1. 20 Utah 2d 30, 432 P.2d 343 (1967).

that the plaintiff also has a constitutional right, and that is to have his case decided under the law, and the rules should not be bent to protect a man who refuses to make an issue simply because to do so would tend to incriminate him.

432 P.2d 347.

The same rationale applies in the instant case. The sole issue at trial was whether the defendant purloined the check after receiving full payment therefor. Had she been able to give a truthful answer to plaintiff's requests for admission that she did not take the check, she of course could not have incriminated herself. On the other hand, having claimed the privilege against incrimination, the logical and justifiable inference to be drawn is that she did take the check. Therefore, the court did not abuse its discretion in striking her pleadings[2] and entering judgment in favor of plaintiff by default.

---

**2.** Pursuant to the sanctions provided by Rule 37(b)(2)(C), Utah Rules of Civil Procedure.